## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACK's CANOES & KAYAKS, LLC<br>3500 K Street, N.W.<br>Washington, D.C.  20007<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONAL PARK SERVICE<br>1849 C Street, N.W.<br>Washington, D.C.  20240,<br><br><br>NATIONAL PARK FOUNDATION<br>1201 Eye Street, N.W., Suite 550B<br>Washington, D.C.  20005,<br><br>and<br><br>THE DISTRICT OF COLUMBIA<br>John A. Wilson Building, 6th Floor<br>1350 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20004,<br><br>    Defendants. | Case No.:<br><br><br>JURY DEMANDED |

## VERIFIED COMPLAINT

Plaintiff Jack's Canoes & Kayaks, LLC (hereinafter "Jack's LLC" or

"Plaintiff") hereby files this Complaint and alleges as follows:

# I.

## PRELIMINARY STATEMENT

1.     This action seeks to protect Jack's LLC and its business known as Jack's Boathouse from destruction by the National Park Service ("NPS") and the National Park Foundation ("NPF")—two parties that erroneously believe that they were assigned the power to do so by the District of Columbia, which owns Lot 805 in Square 1179 ("Lot 805") in Georgetown where Jack's Boathouse is located.

2.     Specifically, this action seeks injunctive relief from the NPS's January 18, 2013, decision contained in a Request for Qualification ("RFQ") to terminate the indefinite 1973 lease (the "Lease"), under which Jack's LLC has been a tenant since April 2007.

3.     In the RFQ, the NPS states that the Lease will be terminated upon execution of a concession contract no later than March 1, 2013.  The decision by the NPS—which is not a party to the Lease—and the NPF—to which the District of Columbia purportedly delegated its "duties" under the Lease and assigned the rents payable under the Lease—is egregious and violates numerous rights of Jack's LLC.

4.     Under the concession the NPS plans to issue, the concessionaire would pay franchise fees to the NPS (and in turn to the United States Treasury),

rather than paying rents to the NPF for the benefit of the Georgetown Waterfront Park as expressly required by the 1985 Resolution and the 1987 Letter.

5. Importantly, the NPF's decision to terminate the Lease amounts to an illegal self-help eviction not permitted in the District of Columbia.

6. This action further seeks to prevent the NPS and NPF from taking any further actions whatsoever that interfere in any manner with the continuing operation of Jack's Boathouse until it is finally decided whether the NPS and NPF have any right to evict Jack's LLC, whose rents are paid to the NPF for the benefit of the Georgetown Waterfront Park, and replace Jack's LLC with a concessionaire whose "franchise fees" (not rents) would be payable to the NPS and, consequently, to the United States Treasury.

7. This action also seeks, *inter alia*, the following declaratory judgments:

   a) Jack's LLC is a tenant under, is in full compliance with, and has no uncured breaches of the Lease;

   b) Jurisdiction over Lot 805 was never effectively transferred to the NPS or the NPF, or, if transferred to the NPS or the NPF, has reverted to the District of Columbia; and

   c) The NPS's and the NPF's plan to terminate the Lease and evict Jack's LLC in order for the NPS to grant a concession to operate Jack's Boathouse under which all franchise fees

would be paid to the NPS (and not to the NPF for the benefit of the Georgetown Waterfront Park), constitute actions not authorized by any law, act, assignment or delegation from the District of Columbia to the NPS or the NPF.

8.    Finally, this action seeks damages from the NPF for negligently and/or intentionally conspiring with the NPS to interfere with and destroy Jack's LLC's much-beloved Jack's Boathouse business.

## II.

## PARTIES

9.    Plaintiff Jack's Canoes & Kayaks, LLC ("Jack's LLC" or "Plaintiff"), a District of Columbia limited liability company, is solely owned by Mr. Paul Simkin, and is the owner and operator of Jack's Boathouse located at 3500 K Street, N.W., Washington D.C. 20007.  Jack's LLC owns Lot 806 in Square 1179 ("Lot 806"), which is adjacent to Lot 805 owned by the District of Columbia. Jack's Boathouse's operations occur on Lots 805 and 806.

10.    Defendant National Park Service ("NPS") is a bureau of the United States Department of the Interior, responsible for national park management and program implementation.  The headquarters of the NPS is at 1849 C Street, N.W., Washington, D.C. 20240.

11.   Defendant National Park Foundation ("NPF") is a 501(c)(3) non-profit, tax-exempt organization having its headquarters at 1201 Eye Street, N.W., Suite 550B, Washington, D.C. 20005.  Although the NPF supports the work of the NPS, it is a separate entity whose Charter states that "the United States shall not be liable for any debts, defaults, acts, or omissions of the Foundation."

12.   Defendant The District of Columbia ("District of Columbia") owns Lot 805 on which Jack's Boathouse is located in Georgetown at 3500 K Street, N.W., Washington, D.C.  20007.

## III.

## JURISDICTION AND VENUE

13.   This Court has Federal Question jurisdiction pursuant to 28 U.S.C. § 1331.

14.   This Court is authorized to award declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

15.   This Court is authorized to award attorneys' fees and costs against Defendant NPS under 28 U.S.C. § 2412.

16.   Venue is proper in this District under 28 U.S.C. § 1391(e) because all events pertaining to action occurred in this District and because all parties to this action are incorporated or located in this District.

## IV.

## <u>FACTS</u>

17.　Jack's LLC owns and operates a business known as "Jack's Boathouse," which offers canoe and kayak rentals, tours, storage and other related services.

18.　Jack's LLC succeeded Frank Baxter in the ownership and operation of the business at Jack's Boathouse, where Frank's father, John "Jack" Baxter, began renting boats in 1945.

19.　The property where "Jack's Boathouse" is located consists of two parcels of land taxed as Square 1179, Lot 805 ("Lot 805") and Square 1179, Lot 806 ("Lot 806").

20.　In 1973, as part of a compromise with the District of Columbia, which wanted to take Lot 805 for the construction of Whitehurst Freeway, the District of Columbia agreed to buy Lot 805 from John and Norma Baxter and to lease it back to them so they could continue to own and operate Jack's Boathouse.

21.　Pursuant to an August 28, 1973 Deed, John and Norma Baxter sold Lot 805 in fee simple to the District of Columbia for $244,160.00.  The District of Columbia currently owns Lot 805.  On October 1, 1973, the District of Columbia entered into the Lease with the Baxters.

22.   John and Norma Baxter retained ownership of Lot 806, a small parcel of land adjacent to Lot 805.  Upon their death, Lot 806 passed to their son, Frank Baxter.  On April 15, 2009, Frank Baxter, an owner of Jack's LLC until his death that year, deeded Lot 806 to Jack's LLC, the current owner of that Lot.

23.   In 1985, the District of Columbia Council passed a Resolution intended to transfer limited administrative jurisdiction over a number of land parcels on the Georgetown Waterfront, including Lot 805, to the NPS.

24.   Resolution 6-284 of the Council of the District of Columbia dated September 10, 1985 (the "1985 Resolution") states that, "Jurisdiction over . . . Lot . . . 805 in Square 1179 shall be transferred to the National Park Service 5 years after the effective date of this resolution unless . . . suitable sites and facilities have not been obtained for the relocation of those public works facilities now located on the parcels of land that are part of Georgetown Waterfront Park."  Such public works facilities were not relocated within five years after the effective date of the 1985 Resolution.

25.   On December 21, 1999, the District of Columbia Council passed "emergency" Resolution 13-420 (the "1999 Resolution"), stating that "the National Park Foundation can accept the assignment of leases [including the Lease] for the National Park Service under the transfer of jurisdiction authorized by Council Resolution 6-284," (referred to herein as the 1985 Resolution).  The 1999

Resolution was effective for ninety (90) days from December 21, 1999, until March 21, 2000.

26.    On April 4, 2000, after the 1999 Resolution had expired, the District of Columbia Council passed "emergency" Resolution 13-519 (the "2000 Resolution"), stating that "the National Park Foundation can accept the assignment of leases [including the Lease] for the National Park Service under the transfer of jurisdiction authorized by Council Resolution 6-284" (referred to herein as the 1985 Resolution). The 2000 Resolution was effective for ninety (90) days from April 4, 2000, until July 3, 2000.

27.    Both the 1999 Resolution and the 2000 Resolution state that, "The office of the Corporation Counsel, in a memorandum dated May 7, 1999 concerning the transfer of lease tenants to the NPS, opined that legislation is necessary to authorize the assignment of leases to the National Park Foundation. . . . Once this clarifying legislation is effective, the assignment of leases can occur."

28.    On March 30, 2000, during the gap between when the 1999 Resolution expired and the 2000 Resolution became effective, the District of Columbia and the NPF signed an Assignment of Leases purporting to transfer the Lease to the NPF.

29.    The NPS has repeatedly cited the 1985 Resolution, as well as the Lease, as authority for its attempts to terminate the Lease with Jack's LLC, despite

the fact that the NPS is not a party to the Lease (purportedly assigned by the District of Columbia to the NPF).

30.   Since its incorporation in 2007, Jack's LLC has been timely paying rent to the NPF.

31.   Between 2007 and August 2012, the NPF regularly cashed Jack's LLC's rent checks. Without any explanation, the NPF stopped cashing Jack's LLC's rent checks in August 2012.

32.   In August 2012, the NPS sent a draft concession contract to Jack's LLC for the continued operation of Jack's Boathouse.

33.   In October 2012, the NPS ceased communications with Jack's LLC on the subject of the concession contract, stating only "[w]e are unable to proceed at this time and will contact you in the near future."

34.   In a December 18, 2012 letter (the "eviction letter"), the Regional Director of the NPS sent Jack's LLC "notice . . . to terminate its occupancy of the leased premises. . . . [and to] . . . vacate the property on or before 11:59p.m. on January 31, 2013 and remove all personal property from the premises."

35.   One week later, in a December 24, 2012 email, the Director of the NPS notified Jack's LLC that, after receiving "hundreds of emails from citizens concerned with the future of Jack's Boathouse . . . further action on the lease termination [is withheld] until I have conducted a more thorough review and

determined the best course of action." Other than a meeting with the NPS on December 26, 2012, at which its officials robotically read the above quoted language multiple times and refused to answer any questions, the NPS did not communicate with Jack's LLC again until January 18, 2013.

36. On January 18, 2013, the NPS provided a letter to Jack's LLC withdrawing its December 18, 2012, eviction letter and informing Jack's LLC that the NPS intended to terminate the Lease upon execution of a concessions contract by the end of February 2013. The NPS has refused to reveal to Jack's LLC how Jack's Boathouse can be operated by both Jack's LLC—a tenant who cannot be evicted without a Court Order (*i.e.*, pursuant to a self-help eviction by the NPF)— and a concessionaire.

37. That same day (January 18, 2013), the NPS issued a Request for Qualifications (Solicitation Number TC-ROCR004-12), amended on January 28, 2013 (the "RFQ"), seeking parties interested in a concession contract for the operation of Jack's Boathouse owned by Jack's LLC. Responses to the RFQ are due nine (9) days after its last amendment (*i.e.,* on February 6, 2013). The RFQ states that, "The [1973] lease will be terminated effective upon execution of" the concession contract.

38.   On January 23, 2013, the NPS issued a virtually identical RFQ (Solicitation Number CC-JACK001) for "Non-motorized boat rental & storage services" at Jack's Boathouse, but indicating that the contracting office is in Lakewood, Colorado.

## V.

## CAUSES OF ACTION

## COUNT ONE

**Declaratory Judgment**
**(National Park Service, National Park Foundation, and**
**the District of Columbia)**

39.   Plaintiff repeats the allegations set forth in paragraphs 1 through 38 as if set forth fully herein.

40.   Resolution 6-284 of the Council of the District of Columbia dated September 10, 1985 (the "1985 Resolution") states that jurisdiction over Lot 805 shall be transferred to the NPS "5 years after the effective date of this resolution unless . . . suitable sites and facilities have not be obtained for the relocation of those public works facilities [including D.C. Department of Public Works' storage facilities] now located on the parcels of land that are part of Georgetown Waterfront Park." Such public works facilities were not relocated within five years after the effective date of the 1985 Resolution.

41.   The transfer of jurisdiction for administration and maintenance

authorized in the 1985 Resolution from the District of Columbia to the NPS was "contingent upon an exchange of letters between the Mayor of the District of Columbia and the Regional Director of the National Park Service" that were required to provide "in detail, for the following: . . . (4) The exchange of letters shall include conditions, including a reversion of jurisdiction to the District of Columbia, which fully protect the District of Columbia in the event . . . of (A) Amendment or cancellation of the June 7, 1985, deed (the "1985 Deed") between Washington Harbour Associates, Georgetown Potomac Company, Mount Clare Properties (D.C.) Inc., and the United States of America. . . ."

42.    The "exchange of letters" required by the 1985 Resolution was contained in a single letter dated May 18, 1987 and signed by Mayor Marion Barry and Mr. Manus J. Fish, Regional Director, National Capital Region of the NPS (the "1987 Letter").

43.    The 1987 Letter affirmed that a material amendment to the 1987 Deed would indeed trigger reversion of Jurisdiction for Administration and Maintenance to the District of Columbia.

44.    A Supplemental Deed of Easements dated March 1, 2005 (the "2005 Amendment") significantly and materially amended the 1985 Deed.

45.    Pursuant to the 1985 Resolution, the 2005 Amendment caused jurisdiction for administration and maintenance over Lot 805 to revert to the

District of Columbia.

46. The District of Columbia City Council further resolved that the exchange of letters, required for approval of the 1985 Resolution, was required to provide, in detail, for the following: "(7) The District of Columbia shall assign existing leases to the National Park Service and the National Park Service shall dedicate, through whatever means practicable, any revenues from those leases to park development. . . ." The "existing leases" included the Lease.

47. The exchange of letters were ordered to provide for the additional requirement that "(9) The National Park Service shall assume responsibility to repair, maintain, and protect all wharves, piers, bulkheads, and similar structures that are located on the transferred land on in adjacent waters." The 1987 Letter created an exception to this responsibility not authorized by the 1985 Resolution, namely, that the NPS did not have to repair, maintain and protect wharves, piers, bulkheads and similar structures that are "the subject of leases located on the transferred land or in adjacent waters."

48. In the 1987 Letter, the District of Columbia did not assign the Lease to the NPS, as required by the 1985 Resolution. Instead, the District of Columbia purportedly "delegate[d] its duties" under the Lease to the NPF and "assign[ed] the rents derived" from the Lease "to the National Park Foundation, to be used for the benefit of the Georgetown Waterfront Park."

49.   The 1987 Letter further stated that it did "not preclude the assignment of existing leases to the National Park Service." No such assignment to the NPS ever occurred.

50.   The 1987 Letter was fundamentally inconsistent with, and did not satisfy the prerequisites under the 1985 Resolution for the transfer of jurisdiction over Lot 805 from the District of Columbia to the NPS.

51.   Even if the 1987 Letter satisfied the prerequisites under the 1985 Resolution for the transfer of jurisdiction to the NPS, neither the 1985 Resolution nor the 1987 Letter authorizes the NPS or the NPF to terminate the Lease, to evict any lessee, including Jack's LLC from Lot 805, or to grant a concession to operate Jack's Boathouse—as such actions are not "duties" of the District of Columbia delegated to the NPS or the NPF.

52.   On December 21, 1999, the District of Columbia Council passed "emergency" Resolution 13-420 (the "1999 Resolution"), stating that "the National Park Foundation can accept the assignment of leases [including the Lease] for the National Park Service under the transfer of jurisdiction authorized by Council Resolution 6-284," (referred to herein as the 1985 Resolution).   The 1999 Resolution was effective for ninety (90) days from December 21, 1999, until March 21, 2000.

53.   On April 4, 2000, after the 1999 Resolution had expired, the District

of Columbia Council passed "emergency" Resolution 13-519 (the "2000 Resolution"), stating that "the National Park Foundation can accept the assignment of leases [including the Lease] for the National Park Service under the transfer of jurisdiction authorized by Council Resolution 6-284" (referred to herein as the 1985 Resolution). The 2000 Resolution was effective for ninety (90) days from April 4, 2000, until July 3, 2000.

54.    Both the 1999 Resolution and the 2000 Resolution state that, "The office of the Corporation Counsel, in a memorandum dated May 7, 1999 concerning the transfer of lease tenants to the NPS, opined that legislation is necessary to authorize the assignment of leases to the National Park Foundation. . . . Once this clarifying legislation is effective, the assignment of leases can occur."

55.    On March 30, 2000, during the gap between when the 1999 Resolution expired and the 2000 Resolution became effective, the District of Columbia and the NPF signed an Assignment of Leases purporting to transfer the Lease to the NPF.

56.    Under the concession the NPS plans to issue, franchise fees would be payable to the NPS (and in turn to the United States Treasury), rather than to the NPF for the benefit of the Georgetown Waterfront Park as required by the 1985 Resolution and the 1987 Letter.

57.     Even if jurisdiction over Lot 805 of the District of Columbia had been effectively transferred by the District of Columbia to the NPS, 40 U.S.C. § 8124 and D.C. Code § 10-111 only permit transfers of jurisdiction between the District of Columbia and the United States for "purposes of administration and maintenance." Neither of these statutes permits rights of "development" such as terminating the Lease, evicting Jack's LLC and installing a concessionaire who would pay franchise fees to the NPS, rather than rent to the NPF for the benefit of the Georgetown Waterfront Park.

## COUNT TWO

### Temporary Preliminary, and Permanent Injunctive Relief
### (National Park Service and National Park Foundation)

58.     Plaintiff repeats the allegations set forth in paragraphs 1 through 57 as if set forth fully herein.

59.     On January 18, 2013, the NPS issued the RFQ seeking parties interested in entering into, and taking over the operation of Jack's Boathouse owned by Jack's LLC by March 1, 2013.

60.     Responses to the RFQ are due nine (9) days after its last amendment (*i.e.,* on February 6, 2013). The RFQ states that, "[t]he [1973] [L]ease will be terminated effective upon execution of" the concession contract.

61.     The RFQ does not indicate or explain how Jack's Boathouse can be operated by both a concessionaire under a concession contract with the NPS, and

Jack's LLC, which is the lessee under the Lease and cannot be evicted without a Court Order (*i.e.*, pursuant to a self-help eviction by the NPF)—regardless of whom is determined to be the lessor under the Lease.

62.    Jack's LLC will suffer irreparable harm should the NPF terminate the Lease and destroy Jack's LLC's business.

63.    NPS and NPF will suffer no harm whatsoever if Jack's LLC is granted injunctive relief in order to maintain the *status quo* during the pendency of this litigation.

64.    NPS and NPF have no basis for loss or hardship, financial or otherwise.

65.    The public interest is likewise served by injunctive relief.

## COUNT THREE

### Intentional Interference with Business Relations
### (National Park Foundation)

66.    Plaintiff repeats the allegations set forth in paragraphs 1 through 65 as if set forth fully herein.

67.    Pursuant to the Lease under which Jack's LLC has been paying, and the NPF has been accepting, rent from Jack's LLC since 2007, Jack's LLC is a tenant under the Lease and is entitled to occupy and operate Jack's Boathouse on Lot 805 (and Lot 806, which is owned by Jack's LLC).

68.     Jack's LLC relies on the many business relationships it has cultivated with boat storage customers as well as boat rental customers.

69.     The NPF (hereinafter through actions taken on its behalf by the NPS) has acted to intentionally interfere with Jack's LLC's boat storage and boat rental customers by unlawfully pursuing the termination of the Lease and making repeated misrepresentations to Jack's LLC's customers and the public regarding its rights to continue operating Jack's Boathouse.

70.     Since the NPF, along with the NPS, issued its December 26, 2013, Jack's LLC has suffered a loss of business in boat storage customers.

71.     Customers have cancelled contracts with Jack's LLC citing the uncertainty of Jack's LLC's future as publicized by the NPF.

72.     Jack's LLC has had difficulty procuring and making commitments, including large contracts for boat rental services, due to the uncertainty of Jack's LLC's future as publicized by the NPF. Jack's LLC has repeatedly communicated the financial strain of this difficulty to the NPF through the NPS.

73.     Jack's LLC has had difficulty continuing the employment of past managers of the business for the upcoming season due to the uncertainty of Jack's LLC's future.

74.     The NPF has repeatedly publicized its efforts to unlawfully terminate the Lease with Jack's LLC even after Jack's LLC repeatedly informed the NPF and

the NPS that their actions were killing their business relationships with customers and employees alike.

75.    The NPF and the NPS continue to seek to terminate Jack's LLC's lease and to publicize its efforts with repeated misrepresentations, with the intent of harming Jack's LLC's business relationships.

76.    Jack's LLC has been harmed by NPF's wrongful actions.

## COUNT FOUR

### Conspiracy to Carry Out An Unlawful Eviction and Interfere with Jack's LLC's Business Relations (National Park Foundation)

77.    Plaintiff repeats the allegations set forth in paragraphs 1 through 76 as if set forth fully herein.

78.    The NPF conspired with the NPS to interfere with Jack's LLC's business and cause irreparable harm to the Plaintiff's business.

79.    The NPF joined the NPS in delivering an eviction notice to Jack's LLC in December 2012 and in sharing the information contained within this eviction notice, including misrepresentations concerning the rights of Jack's LLC, with the public and with customers of Jack's LLC.

80.    These concerted actions on the part of the NPF, in concert with the NPS, were made with the purpose of unlawfully evicting Jack's LLC without a court order and contrary to the laws of this district.

81.    These concerted actions on the part of the NPF, in concert with the NPS, were made with the purpose of harming Jack's LLC's business.

82.    These concerted actions on the part of the NPF, in concert with the NPS, caused Jack's LLC to suffer significant damages.

## COUNT FIVE

### Negligent Interference with Business Relations
### (National Park Foundation)

83.    Plaintiff repeats the allegations set forth in paragraphs 1 through 82 as if set forth fully herein.

84.    Defendant NPF's actions described above, including its statements (hereinafter through actions taken on its behalf by the NPS) to the public regarding Jack's LLC, as well as its efforts to unlawfully terminate the Lease, materially interfered with Jack's LLC's business relations, causing it to lose significant business.

85.    Defendant NPF's actions and statements to the public with regard to Jack's LLC constitute negligent interference with business relations.

86.    Jack's LLC has suffered financial damages as a result of Defendant NPF's interference with the Plaintiff's business.

## VI.

## <u>RELIEF REQUESTED</u>

Plaintiff Jack's Kayaks & Canoes, LLC ("Jack's LLC") respectfully prays for the following relief:

1. Pursuant to Count One, Jack's LLC respectfully prays that this Court enter an Order declaring that:

   a. Jack's LLC is a lessee under the Lease;

   b. The Lease was never effectively assigned to the NPF and the NPS is not a party to the Lease;

   c. Jurisdiction for administration and maintenance over Lot 805 was never effectively transferred by the District of Columbia to the NPS or, if it was, such jurisdiction has reverted to the District of Columbia;

   d. The NPS and NPF decision to terminate the Lease and evict Jack's LLC in order for the NPS to grant a concession contract and earn franchise fees payable to the United States Treasury, are not permitted by any District of Columbia assignment, resolution, act, letter, or authority, and constitute development actions and not the administration or maintenance permitted under 40 U.S.C. § 8124, D.C. Code § 10-111; and

    e. Neither the NPF nor the NPS have the power or authority to terminate the Lease and evict Jack's LLC (with or without a Court Order).

2. Pursuant to Count Two, Jack's LLC respectfully prays that this Court enter Orders enjoining NPF and NPS temporarily, preliminarily and permanently from taking any further actions whatsoever that interfere in any manner with the continuing operation of Jack's Boathouse by Jack's LLC, including without limitation, seeking or threatening to terminate the Lease or evict Jack's LLC without a Court Order <u>following</u> this Court's determination of whether the NPF and/or the NPS have the power and jurisdiction to do so;

3. Pursuant to Count Three against Defendant NPF, Jack's LLC respectfully prays that this Court grant it compensatory and punitive damages in an amount to be determined at trial, plus pre- and post-judgment interest, attorney's fees and expenses as allowable by law;

4. Pursuant to Count Four against Defendant NPF, Jack's LLC respectfully prays that this Court grant it compensatory and punitive damages in an amount to be determined at trial, plus pre- and post-judgment interest, attorney's fees and expenses as allowable by law;

5. Pursuant to Count Five against Defendant NPF, Jack's LLC respectfully prays that this Court grant it compensatory damages in an amount to be determined at trial, plus pre- and post-judgment interest, attorney's fees and expenses as allowable by law; and

6. Jack's LLC respectfully prays that this Court grant it such other and further relief, including attorney's fees and costs, as this Court may deem just and proper.

Respectfully submitted,

Charles H. Camp (D.C. Bar No. 413575)
Law Offices of Charles H. Camp, P.C.
1025 Thomas Jefferson Street, N.W.
Suite 115G
Washington, D.C. 20007
Telephone:   (202) 457-7786
Facsimile:   (202) 457-7788
E-mail:   ccamp@charlescamplaw.com

**Counsel for Plaintiff**
**Jack's Canoes & Kayaks, LLC**

January 31, 2013

## JURY DEMAND

Plaintiff Jack's Canoes & Kayaks, LLC hereby demands trial by jury of all issues so triable.

Charles H. Camp (D.C. Bar No. 413575)
Law Offices of Charles H. Camp, P.C.
1025 Thomas Jefferson Street, N.W.
Suite 115G
Washington, D.C. 20007
Telephone:  (202) 457-7786
Facsimile:   (202) 457-7788
E-mail:       ccamp@charlescamplaw.com

**Counsel for Plaintiff**
**Jack's Canoes & Kayaks, LLC**

January 31, 2013

## **VERIFICATION**

I, Paul Simkin, Managing Member and sole owner of Plaintiff Jack's Canoes & Kayaks, LLC ("Jack's LLC"), under penalty of perjury pursuant to 28 U.S.C. Section 1746, hereby verify on behalf of Plaintiff Jack's LLC that all factual allegations contained in the foregoing Verified Complaint are true and correct to the best of my knowledge.

_____

Paul Simkin

January 31, 2013