**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

JACK'S CANOES & KAYAKS, LLC,

      Plaintiff,

      v.

NATIONAL PARK SERVICE,
NATIONAL PARK FOUNDATION, and
THE DISTRICT OF COLUMBIA,

      Defendants.

Civil Action No. 13-00130 **(CKK)**

---

**MEMORANDUM OPINION**
(March 28, 2013)

Plaintiff Jack's Canoes & Kayaks, LLC ("Plaintiff") filed suit against the National Park

Service ("NPS"), the National Park Foundation ("NPF"), and the District of Columbia

("District") relating to purportedly illegal attempts by the NPS and NPF (together the "Park

Defendants") to terminate a lease under which Plaintiff claims to have been a tenant since April

2007.  *See* Compl., ECF No. [1]. Presently before the Court is Plaintiff's [12] Motion for

Temporary Restraining Order and Preliminary Injunction.  In brief, Plaintiff seeks an order

barring the Park Defendants from taking any actions that interfere in any manner with the

continuing operation of Plaintiff's boathouse business, including seeking or threatening to

terminate the lease to which Plaintiff claims to be a party or evicting Plaintiff without a Court

Order following a final judgment on whether the NPF and/or the NPS have the power and

jurisdiction to do so.[1]  Also pending before the Court are the District's [19] Motion to Dismiss

and the Park Defendants' [22] Motion to Dismiss, both of which were filed subsequent to the

---

[1] Plaintiff's Motion seeks preliminary injunctive relief against only the Park Defendants.  It does
not purport to seek preliminary injunctive relief against the District directly.

filing of Plaintiff's motion for temporary and injunctive relief and in accordance with the briefing schedule ordered by the Court.

Upon consideration of the pleadings and accompanying exhibits,[2] the relevant legal authorities, and the record as a whole, the Court finds that temporary or preliminary injunctive relief is not warranted on the present record.  Accordingly, Plaintiff's [12] Motion for Temporary Restraining Order and Preliminary Injunction is DENIED.  Further, because Plaintiff lacks constitutional standing with respect to one of its requests for declaratory judgment against the District, and is barred by the applicable statute of limitations from asserting the entirety of its request for declaratory relief against the District, the Court shall GRANT the District's [19] Motion to Dismiss.  The Court shall address the Park Defendants' [22] Motion to Dismiss by separate order at a later time.

## I. BACKGROUND

Unless otherwise indicated, all facts set forth herein are taken from Plaintiff's Complaint and are presumed true for purposes of the Court's consideration of the instant motions.  As of April 2007, when Plaintiff was incorporated as a limited liability corporation, Plaintiff has

---

[2] While the Court renders its decision on the entire record before it, its consideration has focused on the following documents: Compl., ECF No. [1]; Pl's Mot. for Temporary Restraining Order and Preliminary Injunction & Mem. of P. & A. in Supp. of Mot. ("Pl.'s Mem."), ECF No. [12]; Pl.'s Aff. in Supp. of Mot. for Temporary Restraining Order and Preliminary Injunction ("Pl.'s Aff."), ECF No. [12-3]; Def. District of Columbia's Mot. to Dismiss & Mem. of P. & A. in Supp. of Mot. ("District's Mem."), ECF No. [19]; Defs' NPS & NPF's Opp'n to Pl.'s Mot. for Temporary Restraining Order and Preliminary Injunction & Mot. to Dismiss ("Park Defs' Opp'n"), ECF No. [21]; Pl.'s Opp'n to District of Columbia's Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. [23]; Pl.'s Mem. of P. & A. in Reply to NPS & NPF's Opp'n to Pl.'s Mot. for Temporary Restraining Order and Preliminary Injunction and in Opp'n to their Mot. to Dismiss Pl.'s Complaint ("Pl.'s Reply"), ECF No. [24]; Defs' NPS & NPF's Reply in Supp. of Mot. to Dismiss Pl.'s Complaint ("Park Defs' Reply"), ECF No. [26]; Def. District of Columbia's Reply in Further Supp. of Mot. to Dismiss ("District's Reply"), ECF No. [27].  In an exercise of its discretion, the Court finds that holding oral argument on the instant motion would not be of assistance in rendering a decision. *See* LCvR 7(f).

operated a boathouse business offering canoe and kayak rentals, tours, storage, and other related services at 3500 K St. N.W., Washington, D.C.  Compl. ¶¶ 9, 17, 30.  Plaintiff's operations occur on two adjacent parcels of land on the Georgetown Waterfront: Lot 806 (which Plaintiff owns) and Lot 805 (which is owned by the District but managed by NPS pursuant to a transfer of administrative jurisdiction over several acres of land that constitute the Georgetown Waterfront Park).  *See* Compl. ¶¶ 9, 12, 23-28. Plaintiff contests the validity of the District's transfer to NPS of administrative jurisdiction over Lot 805.  *See generally id.*

By way of background, Plaintiff succeeded an individual by the name of Frank Baxter in the ownership and operation of the business that was started by Frank Baxter's mother and father, John and Norma Baxter, in 1945.  *Id.* ¶ 19.  In 1973, as part of a compromise with the District, which wanted to take Lot 805 for the construction of Whitehurst Freeway, the District agreed to buy Lot 805 from John and Norma Baxter and to lease it back to them so that they could continue to own and operate the boathouse. *Id.* ¶ 20.  On August 28, 1973, John and Norma Baxter deeded Lot 805 in fee simple to the District for $244,160.00.  *Id.* ¶ 21.  On October 1, 1973, the District and the Baxters entered into a lease with respect to Lot 805 (the "Lease").  *Id.* & Pl.'s Mem., Ex. 4 (Lease).

The Lease, the "express purpose" of which is described therein as "permitting a temporary lease of the hereinafter described premises" by the Baxters for boat rentals and related activities, states in pertinent part: "[T]he District does hereby grant unto the Lessee, use and occupancy of [Lot 805], commencing October 1, 1973 and continuing thereafter from month to month for sum of $275.00 ($275.00) per month[.]"  Pl.'s Mem., Ex. 4 (Lease), at 1.  Beginning April 1, 1982, the monthly payment amount increased to $356.00 pursuant to a letter amendment to the Lease sent by the District and countersigned by John and Norma Baxter.  *Id.* at 5.

On September 10, 1985, the District of Columbia Council passed Resolution 6-284 (the "1985 Resolution"), which was intended to initiate the transfer of administrative jurisdiction over a number of land parcels on the Georgetown Waterfront, including Lot 805, to the NPS for the purpose of establishing and maintaining the Georgetown Waterfront Park.  Compl. ¶ 24 & Pl.'s Mem., Ex. 7 (D.C. City Council Resolution 6-284 (Sept. 10, 1985)).  The 1985 Resolution states, in relevant part, that "Jurisdiction over … Lot … 805 … shall be transferred to the National Park Service 5 years after the effective date of this resolution unless … suitable sites and facilities have not been obtained for the relocation of those public works facilities now located on the parcels of land that are part of the Georgetown Waterfront Park."  Pl.'s Mem., Ex. 7 (D.C. City Council Resolution 6-284 (Sept. 10, 1985)), at 2.  The 1985 Resolution further states that it is "contingent upon an exchange of letters" between the District of Columbia Mayor and the Regional Director of NPS, which were to memorialize the agreement on several matters – including, *inter alia*, that the transferred land be used only for public park and related purposes; that the District assign its existing leases on the land to the NPS and the NPS dedicate all revenues from those leases to park development; and that NPS assume responsibility to repair and maintain all wharves, piers, bulkheads, and similar structures located on the transferred land. *Id*. at 3-4.  The letters were also to include "conditions, including a reversion of jurisdiction to the District … which fully protect the District … in the event … of …an [a]mendment or cancellation of [a] January 7, 1985 deed [of easements] between Washington Harbour Associates [a District of Columbia partnership], Georgetown Potomac Company, Mount Clare Properties (D.C.) Inc., and the United States of America[.]"  *Id*. at 3.

A letter agreement from the NPS dated May 18, 1987 and countersigned by the District of Columbia Mayor on July 2, 1987 (the "1987 Letter") set forth the parties' agreements to the

conditions of transfer set forth in the 1985 Resolution.  *See* Ex. 8 (Letter from Manus J. Fish,

NPS Regional Director to Hon. Marion S. Barry, Mayor of the District of Columbia (May 18,

1987)).   According to both the District and the Park Defendants, the actual transfer of

administrative jurisdiction was properly executed in 1999.  *See* District's Mem. at 3 n.2; Park

Defs' Opp'n at 3-4.  For reasons described more fully *infra* Part II.A., Plaintiff contends that the

transfer process was "procedurally flawed."  *See* Pl.'s Mem. at 6.

Although both the 1985 Resolution and the 1987 Letter indicate an agreement by the

District to assign the Lease to *NPS* at an undetermined future date, no such direct assignment

ever occurred.  Instead, on March 30, 2000, the District executed an assignment agreement

("Assignment Agreement") assigning all of the existing District leases on the land to *NPF*.  *See*

Pl.'s Mem., Ex. 19 (Assignment of Leases Agreement (March 30, 2000)).  NPF is a 501(c)(3)

non-profit organization that was chartered by Congress in 1967, for the purpose of accepting

private gifts "for the benefit of, or in connection with, the National Park Service, its activities, or

its services."  An Act to Establish the National Park Foundation, Pub. L. No. 90-209 (1967).  The

Assignment Agreement states, in pertinent part:

> WHEREAS, one of the conditions set forth in the [1985] Resolution was the
> assignment by the District to NPS of existing District leases at Georgetown Park, and a
> commitment by NPS to use the lease revenues for park development and maintenance
> at the Georgetown Park; and … because NPS has determined that revenues received by
> NPS from the Leases could not be dedicated for development and maintenance of
> Georgetown Park, NPS requested that the District assign the Leases to Assignee … The
> District does hereby assign the Leases to Assignee.  Assignee does hereby accept the
> Leases and does unconditionally assume all of the responsibilities, obligations, and
> liabilities of Assignor under the Lease, including any and all outstanding obligations
> and liabilities of Assignor.

*Id*.

The Assignment Agreement cites as authority the District of Columbia Council Act No.

13-252, titled the "Transfer of Jurisdiction over Georgetown Waterfront Park for Public Park and

Recreational Purposes, S.O. 84-230, Emergency Act of 1999," effective January 27, 2000, which the Agreement describes as having amended the Resolution to authorize the District to assign the leases to NPF. *Id.* Earlier correspondence between NPS and NPF indicates that NPS directed NPF to accept the District's assignment of the Lease and also "accept[ed] appointment as [NPF's] agent for purposes of fulfilling all obligations, and pursuing all rights and remedies to the terms and provisions of the Lease[], in accordance with [its] terms[.]" *See* Park Defs' Reply, Ex. 1 (Letter from Terry R. Carlstrom, Regional Director, NPS to James D. Maddy, NPF President (Sept. 24, 1999)), ECF No. [26-1].

In 2007, upon Plaintiff's incorporation, Frank Baxter – successor in interest to John and Norma Baxter and an owner of the business until his death in 2009 – transferred all of his right, title and interest in the corporation, including the lease over Lot 805, to Plaintiff. *See* Pl.'s Mem. at 4 & Ex. 1 (Operating Agreement of Jack's Canoes & Kayaks, LLC). Mr. Baxter also deeded Lot 806 to Plaintiff on April 15, 2009, prior to his death later that year. Compl. ¶ 22. According to Plaintiff, since its incorporation in 2007, Plaintiff has been paying rent to NPF on time and on a monthly basis (in the amount of $356.00 per month pursuant to the Lease as amended by the 1982 letter agreement between the District and the Baxters). Compl ¶ 30. *See also* Park Defs' Opp'n at 3. While NPF regularly cashed Plaintiff's rent checks between 2007 and August 2012, NPF stopped cashing Plaintiff's rent checks from August 2012 through January 2013, the month Plaintiff filed its Complaint. *Id.* ¶ 31.

As the Park Defendants represent in their opposition brief, sometime prior to August 2012, NPS had determined that, in keeping with its Congressional mandate, the non-motorized boat service provided at the site operated by Plaintiff needed to be performed under a concessions contract instead of a lease. *See* Park Defs' Opp'n at 2 (explaining that Congress has

mandated, absent specific exceptions not applicable to this case, that "the Secretary shall utilize concessions contracts to authorize a person, corporation, or other entity to provide accommodations, facilities, and services to visitors to units of the National Park System.") (citing 16 U.S.C. § 5952).  Indeed, according to Plaintiff, in August 2012, NPS sent to Plaintiff a draft concessions contract for continued operation of its boathouse business, Compl. ¶ 32, but ceased communications with Plaintiff on the subject of a concessions contract in October 2012, and no agreement was reached, *id.* ¶ 33.

By letter dated December 18, 2012, the Regional Director of NPS provided Plaintiff "notice … to terminate its occupancy of the leased premises. . . . [and to] vacate the property on or before 11:59 p.m. on January 31, 2013, and remove all personal property from the premises." Compl. ¶ 34 & Pl.'s Mem., Ex. 11 (Letter from Stephen E. Whitesell, NPS Regional Director to Paul Simkin, Owner of Jack's Canoes and Kayaks, LLC (Dec. 18, 2012)).  A NPF representative signed the letter in concurrence, in its capacity as the successor lessor under the Lease.  *See* Pl.'s Mem., Ex. 11 (Letter from Stephen E. Whitesell, NPS Regional Director to Paul Simkin, Owner of Jack's Canoes and Kayaks, LLC (Dec. 18, 2012)).  One week later, in a December 24, 2012 email, the NPS Director notified Plaintiff that, due to public concern about the future of the boathouse, NPS had decided to withhold further action on the termination of the Lease until NPS could conduct a more thorough review and determine the best course of action.  Compl. ¶ 35.

On January 18, 2013, NPS issued a letter to Plaintiff, withdrawing its December 18, 2012 letter and informing Plaintiff that the NPS intended to terminate the Lease upon execution of a concessions contract by the end of February 2013.  *Id.* ¶ 36 & Pl.'s Mem., Ex. 13 (Letter from Stephen E. Whitesell, NPS Regional Director to Paul Simkin, Owner of Jack's Canoes and Kayaks, LLC (Jan. 18, 2013)).  The letter again indicated NPF's concurrence with this decision.

Pl.'s Mem., Ex. 13 (Letter from Stephen E. Whitesell, NPS Regional Director to Paul Simkin, Owner of Jack's Canoes and Kayaks, LLC (Jan. 18, 2013)).  The letter further notified Plaintiff that on that same date, January 18, 2013, NPS was releasing a Request for Qualifications (RFQ) for non-motorized boat rental and storage services at or near the location of Plaintiff's present operation.  *Id*.  The letter indicated that NPS would evaluate all responsive proposals, including Plaintiff's should it wish to submit one, in a fair and consistent fashion.  *Id*.  The deadline to respond to the RFQ was February 6, 2013.  *Id*.  As the parties later represented to the Court during a February 19, 2013 on-the-record telephone conference, Plaintiff chose not to submit a response to the RFQ.

On January 31, 2013 – thirteen days after the Park Defendants issued the lease termination letter – Plaintiff filed its Complaint in this matter.  *See* Compl.  The Complaint asserts the following five counts: (i) Declaratory Judgment (against the Park Defendants and the District); (ii) Temporary, Preliminary, and Permanent Injunctive Relief (against the Park Defendants); (iii) Intentional Interference with Business Relations (against NPF); (iv) Conspiracy to Carry Out an Unlawful Eviction and Interfere with Plaintiff's Business Relations (against NPF); and (v) Negligent Interference with Business Relations (against NPF).  *See id*.

On February 18, 2013 – seventeen days after Plaintiff filed its Complaint and exactly one month after the Park Defendants issued the lease termination letter – Plaintiff filed the motion for temporary restraining order and preliminary injunction presently before the Court.  *See* Pl.'s Mot.  The Court held a telephonic status conference with the parties on February 19, 2013, during which the Park Defendants indicated their agreement not to take any action against Plaintiff in connection with its asserted leasehold interest until after March 31, 2013.  *See* Min. Order (Feb.

19, 2013).  The Court ordered the parties to jointly propose a briefing schedule and subsequently granted the schedule requested.[3]  *See id.*

## II. DISTRICT'S MOTION TO DISMISS

Because the District's motion to dismiss directly challenges Plaintiff's constitutional standing to pursue what appears to the Court to be its primary avenue of relief in this matter, the Court shall address this threshold issue first.

Count One of Plaintiff's Complaint, the only count to which the District is a party, seeks a declaratory judgment against the District and the Park Defendants.  Plaintiff seeks a series of declarations under this count – specifically that: (a) Plaintiff is a lessee under the Lease; (b) The Lease was never effectively assigned to NPF, and NPS is not a party to the Lease; (c) Jurisdiction for administration and maintenance over Lot 805 was never effectively transferred by the District of Columbia to NPS, or, if it was, such jurisdiction has reverted to the District of Columbia; (d) The NPS and NPF decision to terminate the Lease and evict Plaintiff in order for NPS to grant a concessions contract are not permitted by any District of Columbia assignment, resolution, act, letter, or authority; and (e) Neither the NPF nor the NPS have the power or authority to terminate the Lease.  *See* Compl. at 21-22.

While Plaintiff's request *vis-à-vis* the Park Defendants broadly seeks to establish its status and rights as a lessee under the Lease and the Park Defendants' *lack* of status as a lessor

---

[3] The Court's February 19, 2013 Minute Order further stated that, in agreeing to withhold action until March 31, 2013 and in proposing the briefing schedule, the parties necessarily agreed, and the Court itself determined, that a ruling on Plaintiff's application for preliminary injunctive relief beyond the twenty-one day timeline set forth in Local Civil Rule 65.1(d) would not prejudice the parties. *See* LCvR 65.1(d) ("On request of the moving party … a hearing on an application for preliminary injunction shall be set by the court no later than 21 days after its filing, unless the court earlier decides the motion on the papers or makes a finding that a later hearing date will not prejudice the parties. The practice in this jurisdiction is to decide preliminary injunction motions without live testimony where possible.").

and corresponding lack of capacity to terminate the Lease, the crux of Plaintiff's request *vis-à-vis* the District is a more targeted challenge to the validity of the District's transfer of administrative jurisdiction over the Georgetown Waterfront Park, including Lot 805, to NPS (which included, as part of the larger transfer process, its assignment of all leases, including the Lease, on the Georgetown Waterfront Park to NPF).  *See* Compl. ¶¶ 39-57.  At bottom, Plaintiff alleges that the process by which the administrative jurisdiction over the Georgetown Waterfront Park was transferred to NPS suffered from several defects such that it was never effectively transferred, *see id.* ¶¶ 39-57, or, alternatively, if it was effectively transferred, a supplemental deed of easements entered into in 2005 should have triggered revision of jurisdiction back to the District under the terms of the 1985 Resolution and 1987 Letter, *see supra* Part I.  *Id.* ¶44.

According to Plaintiff, the practical upshot of the defective transfer process is that the Park Defendants are left "with no standing to evict the Plaintiff, much less negotiate a new lease agreement."  Pl.'s Mem. at 12.  In other words, the entirety of Plaintiff's case against the District appears to be premised upon a theory that because the transfer of administrative jurisdiction was never properly executed (and because the assignment of the Lease to NPF was a part of that broader transfer process), NPF is not actually Plaintiff's lessor.  Therefore, Plaintiff contends that neither NPF nor NPS (acting for and with the concurrence of NPF), has legal capacity to take any action against Plaintiff in connection with its claimed leasehold interest in Lot 805.  As aforementioned, neither the District nor the Park Defendants contest the validity of NPS's administrative jurisdiction over the real property that constitutes the Georgetown Waterfront Park.  *See* District's Mem. at 3 n.2; Park Defs' Opp'n at 3-4.

The District has moved to dismiss Count One pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, on the ground that Plaintiff lacks constitutional

standing to request a declaratory judgment invalidating the transfer of jurisdiction from the District to NPS (which, as the District contends, would effectively require the District to retake and resume control of the Park).[4]  *See* District's Mem. at 3.  The District further argues that even if Plaintiff did have standing to assert this request for declaratory relief, the Court must dismiss Count One insofar as it is asserted against it under Rule 12(b)(6) because it is time-barred by the applicable statute of limitations.  The Court shall address both arguments below.

## A. Standing

Article III of the Constitution limits the authority of federal courts to the resolution of "Cases" and "Controversies."  U.S. Const. art. III, § 2.  "This limitation is no mere formality: it 'defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded.'"  *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012) (quoting *Allen v. Wright*, 468 U.S. 737, 750, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984)).  "The Court begins with the presumption that it does not have subject matter jurisdiction over a case."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed.2d 391 (1994).

In order to survive a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction.  *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).  In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal.*

---

[4] The District also argues that Plaintiff lacks prudential standing to seek the requested declaratory relief.  However, because the Court finds that dismissal of this action against the District is required, in part, on grounds of a lack of constitutional standing, and in its entirety on grounds of the applicable statute of limitations, the Court need not address the District's arguments regarding prudential standing.

*for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

To establish the jurisdictional prerequisite of constitutional standing, Plaintiff must first show that it has suffered an "injury in fact," that is, the violation of a legally protected interest that is "(a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citations and internal quotations omitted). Second, "there must be a causal connection between the injury and the conduct complained of." *Id.* Stated differently, the injury must be "fairly traceable to the defendant's allegedly unlawful conduct." *Allen*, 468 U.S. at 751. Third, it must be "likely" that the injury would be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976)).

Before applying this rubric to the case at hand, the Court pauses to make a preliminary observation about the woeful inadequacy of Plaintiff's briefing in opposition to the District's standing arguments.  It is axiomatic that the "party invoking federal jurisdiction bears the burden of establishing the[ ] elements" of constitutional standing. *Lujan*, 504 U.S. at 561.  Since these

elements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof[.]"  *Id.*  To be sure, at the pleading stage, general factual allegations of injury resulting from the defendant's conduct will suffice.  *Id.*  However, for reasons discussed fully below, the Court finds that Plaintiff's Complaint fails to show how the District's (purportedly flawed) transfer of jurisdiction caused Plaintiff the harm alleged.   Plaintiff's briefing fares no better.

In its motion to dismiss, the District unambiguously argued that Count One fails to satisfy the requirements of constitutional standing, particularly causation and redressability.   *See* District's Mem. at 5.  In response, Plaintiff devotes four pages of its opposition brief to standing, the near entirety of which consists of block quotes from cases discussing an "aggrieved party's" entitlement to challenge agency action pursuant to the Administrative Procedures Act, 5 U.S.C. § 702 (the "Federal APA"), and, in one case, the Metropolitan Washington Airports Act of 1986, codified as amended at 49 U.S.C. §§ 101-112 (which, as Plaintiff explains, the Court analogized to the Federal APA).  *See* Pl.'s Opp'n at 4-7.  Beyond a conclusory single-sentence assertion that Plaintiff possesses standing, Plaintiff makes not one mention to its own case, neglecting to apply the cited case law or to discuss or even reference the facts or circumstances at hand.

Plaintiff has therefore brazenly left the District and the Court alike to guess as to its theory of standing *vis-à-vis* the District.   As the District correctly observes in its reply memorandum, Plaintiff directs the Court only to authority regarding congressional grants of jurisdiction – specifically, the Federal APA and Metropolitan Washington Airports Act of 1986 – that are neither mentioned in the Complaint nor generally applicable to lawsuits against the District.  District's Reply at 3.  Plaintiff has not, and indeed could not, explain how the District

would be amenable to suit under either provision. *See Walker v. Washington*, 627 F.2d 541, 544 (D.C. Cir. 1980) (plaintiff could not assert claims against District pursuant to the Federal APA). Further, even if Plaintiff had identified a statutory basis on which to ground its challenge to the transfer process, it is well-established that statutorily conferred standing does not circumvent the need to establish constitutional standing. *See Am. Legal Found. v. F.C.C.*, 808 F.2d 84, 89 (D.C. Cir. 1987) ("Congress cannot statutorily remove or diminish the constitutional limits on which standing is based.").

With that said, the Court shall now proceed to the merits of the District's standing arguments. Fairly read, Count One asserts two separate (albeit related) requests for declaratory relief applicable to the District. *First*, Plaintiff requests a declaration that the District "never effectively transferred" administrative jurisdiction to NPS, or if it did, that such jurisdiction has since reverted to the District. *See* Compl. at 21, ¶ 1(c). *Second*, Count One requests a declaration that the District "never effectively assigned" the Lease to NPF. *Id.* at ¶ 1(b). Because "a plaintiff must demonstrate standing separately for each form of relief sought," the Court shall separately consider Plaintiff's standing with respect to each request. *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 185, 120 S. Ct. 693, 528 U.S. 167 (2000)).

### 1. Transfer of Administrative Jurisdiction to NPS

The only injury alleged by Plaintiff – both in its Complaint and other submissions – relates to the purported destruction of its business interests, including its alleged interest in the Lease. *See generally* Compl.; Pl.'s Aff. Plaintiff's submissions also unequivocally allege that such injury has arisen from the purportedly wrongful conduct of NPS and/or NPF, beginning no earlier than August 2012, in connection with NPS and/or NPF's ongoing efforts to terminate the

Lease and remove Plaintiff from Lot 805. *Id.* The District argues that even assuming *arguendo* that the harm to Plaintiff's business interests constitutes legally cognizable injury-in-fact for purposes of standing analysis, Plaintiff has not and could not demonstrate that any such harm is "fairly traceable" to the District's transfer of jurisdiction over the property at issue, or that it would be redressed by a decision to declare the District's transfer of administrative jurisdiction invalid. District's Mem. at 6. The Court agrees.

"Although they often overlap, the causation and redressability requirements are theoretically distinct." *Mideast Sys. And China Civil Const. Saipan Joint Venture, Inc. v. Hodel*, 792 F.2d 1172, 1176 (D.C. Cir. 1986). Causation "looks at the relationship between the alleged unlawful conduct and the injury[.]" *Id.* Redressability concerns "the relationship between the injury and the requested relief." *Id.* (citations omitted). "This distinction is important in cases where the required relief is so broad that it could alleviate the injury, but where there is still no causal nexus. In many cases, however, the two criteria are simply two facets of a single causation requirement." *Id.* (citation and internal quotation marks omitted). In some cases, "it is sufficient to treat the two elements as if they were identical." *Id.* The instant case is one of those cases.

Clearly, Plaintiff does not allege that the District itself is directly liable for the Park Defendant's attempts to terminate its alleged leasehold interest. Rather, the underlying conduct challenged by Plaintiff in Count One is the allegedly defective process by which the transfer of administrative jurisdiction over the Georgetown Waterfront Park, including Lot 805, was executed. Specifically, Count One propounds factual allegations relating to various alleged violations of the conditions for the transfer set forth in the 1985 Resolution, occurring between the years of 1987 and 2005 – more than one decade before the purportedly wrongful attempts by NPF and/or NPS to terminate its lease that gave rise to this lawsuit, and also before Plaintiff

alleges to have become a party to the Lease.  *See* Compl. ¶¶ 39-55.  While one of the alleged violations (which the Court shall address *infra* Part II.A.2) directly concerns the District's assignment of the Lease to NPF, all others appear to bear no such connection to the Lease or to any other interest asserted by Plaintiff.

Specifically, Plaintiff takes issue with the following actions:

- ***First,*** Plaintiff alleges that the 1985 Resolution provides that jurisdiction shall be transferred to the NPS "5 years after the effective date of this resolution unless … suitable sites and facilities have not been obtained for the relocation of those public works facilities now located on the parcels of land that are part of the Georgetown Waterfront Park," and alleges – albeit vaguely – that "[s]uch public works facilities were not relocated within five years after the effective date of the 1985 Resolution.  Compl. ¶ 40.

  Notably, Plaintiff nowhere alleges that it was harmed by the alleged failure to relocate any public works facilities.  Rather, Plaintiff merely argues that this failure precludes the valid transfer of administrative jurisdiction over Lot 805 from ever having taken place.  *See* Pl.'s Mem. at 12-16.

- ***Second,*** Plaintiff alleges that the 1985 Resolution mandated that an exchange of letters between the Mayor and the NPS provide for a requirement that the NPS assume responsibility to "repair, maintain, and protect all wharves, piers, bulkheads, and similar structures that are located on the transferred land or in adjacent waters," but that the single 1987 Letter, in an act not authorized by the 1985 Resolution, excepted from the NPS's responsibility the obligation to "repair, maintain, and protect wharves, piers, bulkheads, and similar structures that are the subject of leases on the transferred land or in adjacent waters."  Compl. ¶¶ 46-47.

  Again, Plaintiff nowhere alleges that it was harmed by the alleged limitation on the responsibility provision.  Rather, Plaintiff merely argues that the failure of the 1987 Letter to conform with the requirement set forth by the 1985 Resolution precludes the valid transfer of administrative jurisdiction over Lot 805 from ever having taken place.  Pl.'s Mem. at 12-16.

- ***Third,*** Plaintiff alleges that the Council conditioned approval of the 1985 Resolution on the ability of the exchange of letters to include "conditions, including a reversion of jurisdiction to the District … which fully protect the District … in the event … of …an [a]mendment or cancellation of [a] January 7, 1985 deed between Washington Harbour Associates, Georgetown Potomac Company, Mount Clare Properties (D.C.) Inc., and the United States of America[.]"  Compl. ¶ 41.  While the 1987 Letter purportedly

> sufficiently affirmed that a material amendment to the 1985 Deed would trigger reversion of jurisdiction to the District, *id*. ¶ 43, Plaintiff alleges that a "Supplemental Deed of Easements dated March 1, 2005" "significantly and materially" altered easements provided for in the 1985 Deed, therefore triggering reversion of jurisdiction to the District, *id*. ¶ 44-45.

> Once again, Plaintiff nowhere alleges that the supplemental deed harmed its interests. Rather, Plaintiff merely argues that even if the transfer of jurisdiction had been properly effectuated, jurisdiction necessarily reverted to the District in 2005. Pl.'s Mem. at 16-17.

Even assuming, as the Court is required to do in conducting a standing analysis, that the foregoing allegations are true, the Court is hard-pressed to find that Plaintiff has constitutional standing to seek a declaration invalidating the transfer. For starters, Plaintiff has simply not alleged that the above specified defects themselves caused it harm. Nor does Plaintiff appear to be proceeding under a theory that it suffered "procedural injury" from the District's allegedly flawed execution of the transfer. While "procedural injury" may itself constitute injury-in-fact, Plaintiff has expressly disclaimed any intent to "independent[ly] challenge" the transfer of jurisdiction as such; rather, it is clear that its attack on the transfer process is wedded to its core challenge to the authority of the Park Defendants to act under the Lease. *See* Pl.'s Reply at 11. In any event, even if Plaintiff were claiming procedural injury, "plaintiffs seek[ing] to enforce procedural (rather than substantive) rights … must establish that 'the procedures in question are designed to protect some threatened concrete interest of [theirs] that is the ultimate basis of [their] standing.'" *NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77, 82 (D.C. Cir. 2012) (quoting *Lujan*, 504 U.S. at 573 n. 8). Here, Plaintiff has made no showing that the procedural errors alleged relate in any way to its own leasehold interest.

Rather, it is apparent from Plaintiff's submissions that the alleged procedural errors are Plaintiff's way of attacking the underlying validity of NPS's present-day possession of administrative jurisdiction. The fundamental flaw in Plaintiff's approach, however, is that it has

failed entirely to show a sufficiently close causal nexus between the *transfer of administrative jurisdiction* to NPS and the *assignment of the Lease* to NPF.  More precisely, Plaintiff has made no showing that the practical effect of a declaratory judgment invalidating the transfer of administrative jurisdiction would be to annul NPF's status as lessor.

Plaintiff makes an admittedly superb effort to conflate the two transactions in its submissions to the Court, and the allegations in its Complaint do imply that but for the District's broader efforts to transfer administrative jurisdiction, the District would not have assigned the Lease to NPF.  Yet Plaintiff alleges no facts to even suggest that the purportedly defective execution of the former action necessarily discredits the execution of the latter.  As Plaintiff alleges (and the record before the Court confirms), the District and the NPF executed the Assignment Agreement purporting to transfer the Lease on March 30, 2000.  *See* Compl. ¶ 28; Pl.'s Mem., Ex. 19 (Lease).  Plaintiff also alleges (and the record before the Court confirms) that this assignment agreement was executed in an effort to satisfy one of the conditions set forth in the 1985 Resolution calling for the transfer of jurisdiction.  *See* Compl. ¶¶ 25-28, 46-55; *see also* Pl.'s Mem., Ex. 19 (Lease).  Whether or not this condition was satisfied may certainly be relevant to whether the transfer of jurisdiction was in fact effectuated.  However, it does not automatically follow that a failure to properly effectuate the transfer – which Plaintiff attributes to a handful of technical flaws *wholly unrelated* to the assignment of the Lease – bears any implication for the independent validity of the Assignment Agreement or the corresponding status of NPF as holder of the Lease.  And Plaintiff has provided no allegations or explanation from which the Court could plausibly infer that it does.

Nor has Plaintiff satisfied its burden to show that an order declaring the transfer of jurisdiction ineffective would alleviate its alleged injury.  An order to this effect would, as a

technical matter, revert jurisdiction over the entire Georgetown Waterfront Park to the District. However, for reasons explained above, there is nothing in the record indicating that such a declaration would, operating alone, nullify the Assignment Agreement.  While the District and NPF could agree to execute an agreement reassigning the leases on the property to the District for purposes of consistency, this would nevertheless require additional action beyond the scope of the Court's declaration.  And "[c]ourts have been loath to find standing when redress depends largely on policy decisions yet to be made by government officials."  *U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000).  *See Tex. Alliance for Home Care Servs. V. Sebelius*, 811 F. Supp. 2d 76, 98 (D.D.C. 2011) ("Where, as here, overturning a particular agency action would not alter the final outcome, redressability remains unsatisfied.") (citation omitted). Furthermore, it is well-established that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Lujan*, 504 U.S. at 560-61 (quoting *Simon*, 426 U.S. at 38, 43).  The "likelihood" of the District and NPF taking the additional step to reassign the lease to the District is slim, especially in view of the District's representations that it equally likely – "if not more so" that the District would "renew its transfer of jurisdiction to NPS" or, even if the District were in fact forced to reassume status as Plaintiff's lessor, "itself seek to terminate" Plaintiff's alleged tenancy.  District's Mem. at 7.

Because, for all of the foregoing reasons, Plaintiff has failed entirely to demonstrate causation and redressability, the Court holds that Plaintiff lacks constitutional standing to request a declaratory judgment that the District "never effectively transferred" administrative jurisdiction to NPS, or if it did, that such jurisdiction has since reverted to the District.  *See* Compl. at 21, ¶ 1(c).

2. **Assignment of the Lease to NPF**

Count One of the Complaint also requests a declaration that the District "never effectively assigned" the Lease to NPF.  Compl. at ¶ 1(b).  Plaintiff alleges that, although the 1985 Resolution specifically required the District to assign the Lease to NPS, the District instead assigned the Lease to the NPF.  Compl. ¶¶ 48-55.  While Plaintiff acknowledges the passing by the District of Columbia Council of two Emergency Resolutions amending the 1985 Resolution to permit NPF to "accept the assignment of leases [including the Lease] for the [NPS] under the transfer of jurisdiction authorized by [the 1985 Resolution]," Plaintiff alleges that the Assignment Agreement concerning its Lease was executed at a time after one of the resolutions had expired, and before the other resolution became effective.  *See* Compl. ¶¶ 52-55 & Ex. 17 (Emergency Resolution (April 4, 2000)); Ex. 18 (Emergency Resolution (December 21, 1999)).  Accordingly, Plaintiff argues that because the District failed to provide for the assignment of its Lease to NPF legislatively at the time the assignment was executed, the assignment was invalid. *See* Pl.'s Mem. at 14-15.

As shall be discussed in further detail below in the context of the Court's ruling on Plaintiff's motion for temporary and preliminary injunctive relief, the above allegations are belied by the evidence before the Court, which indicates that the assignment to NPF was in fact legislatively authorized at the time it was executed.  *See infra* Part III.A.  However, because the merits of a plaintiff's case must be assumed when considering standing, *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 658 (D.C. Cir. 2010), the Court will presume for purposes of the present ruling on the District's motion to dismiss the truth of Plaintiff's allegations that the Assignment Agreement both required and lacked legislative authorization.   The Court shall

likewise accept as true for present purposes Plaintiff's allegations that it is a party to the Lease that is the subject of the Assignment Agreement.

In view of these allegations, the Court finds that Plaintiff possesses constitutional standing with respect to its request for a declaration that the District "never effectively assigned" the Lease to NPF.  To be sure, the causal nexus between the District's assignment of Plaintiff's Lease to NPF in 2000 – seven years before Plaintiff even purports to have acquired its claimed interest in the Lease – and the injury and threat to Plaintiff's business interests allegedly resulting from the only recent conduct by the Park Defendants is not exactly direct.  However, because ultimately neither the NPF nor the NPS (acting for and with the concurrence of NPF), would possess the legal authority to take action against Plaintiff in connection with the Lease if the District had never effectively assigned said Lease to the NPF, the Court finds that Plaintiff has met its burden in showing that its alleged injury is fairly traceable to the execution of the Assignment Agreement.  Plaintiff has likewise sufficiently established redressability. In contrast to a declaration invalidating the broader transfer of jurisdiction, the practical and indeed automatic effect of a declaration invalidating the assignment would be to divest the NPF from its purported authority to terminate the Lease.

## B. Statute of Limitations

The District has also moved to dismiss Count One, insofar as that Count is asserted against it, on the ground that Plaintiff's claims are time-barred under the three-year statute of limitations provided by D.C. Code §§ 12-301(7) and (8).  *See* D.C. Code § 12-301(7) (three-year limitations period for actions involving "simple contract, express or implied"); *id*. at (8) (three-year limitations period for actions "for which a limitation is not otherwise specifically prescribed").  A defendant may raise the affirmative defense of statute of limitations in a motion

to dismiss under Federal Rule of Civil Procedure 12(b)(6) when the facts that give rise to the defense are evident from the face of the complaint. *See Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). The Court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred. *Id*. Here, the face of the Complaint makes patently clear that Plaintiff is time-barred from asserting both of its specific requests for declaratory relief applicable to the District – specifically, declarations that the District "never effectively transferred" administrative jurisdiction to NPS, or if it did, that such jurisdiction reverted to the District in 2005, *see* Compl. at 21, ¶ 1(c), and that the District "never effectively assigned" the Lease to NPF, *id*. at ¶ 1(b).

As discussed at length above, all of the actions and omissions giving rise to Plaintiff's attacks on both the validity of the District's transfer of administrative jurisdiction to NPS and the District's assignment of the Lease to NPF occurred no later than 2005. *See* Compl. ¶ 40 (purported failure to relocate public facilities within five years of the 1985 Resolution); Compl. ¶¶ 41-45 (alleged reversion of jurisdiction to the District in 2005 due to amendments to 1985 Deed of Easements); Compl. ¶¶ 46-47 (1987 Letter failed to include conditions as stated in 1985 Resolution); Compl. ¶¶ 46, 48-49, 52-55 (unauthorized assignment of Lease to NPF instead of NPS in 2000). Accordingly, applying the three-year statute of limitations, Plaintiff was precluded from challenging both the transfer of jurisdiction and the assignment of the Lease long before it filed the instant Complaint.

Plaintiff's arguments to the contrary are unavailing. First, Plaintiff argues that the six-year federal statute of limitations under 28 U.S.C. § 2401(a) (the "Federal Tort Claims Act" or "FTCA") – not the three-year District of Columbia statute of limitations should apply because the NPS (*i.e.*, the United States) is a party to this action, and also because jurisdiction in this case

is founded on federal question jurisdiction pursuant to 28 U.S.C. § 1331 (and not diversity of citizenship under 28 U.S.C. § 1332). Pl.'s Opp'n at 8.  Plaintiff provides no authority for the proposition that the FTCA statute of limitations (which applies to actions *against the United States*, 28 U.S.C. § 2401(a)) governs Count I insofar as it is asserted against the *District*, a non-federal defendant, and this Court is aware of none.  Furthermore, the Court agrees with the District that Count I, insofar as it is asserted against the District, may be fairly characterized as asserting a series of contract related claims.  Aside from the FTCA, Plaintiff itself proffers no alternative theory, and several arguments asserted by Plaintiff in fact implicitly validate the District's characterization.  *See*, *e.g.*, Pl.'s Opp'n at 9-11 (citing to cases discussing contract principles and referring to the Defendants' continued reliance on the transfer of jurisdiction and the Lease assignment as ongoing "breaches").

Second, Plaintiff contends that, in declaratory judgment actions, the statute of limitations does not begin to run until the party "becomes aware that the 'government has taken an adverse position.'" Pl.'s Opp'n at 9 (citing *Minidoka Irrigation Dist. v. DOI*, 154 F.3d 924, 926, n.1 (9th Cir. 1998)).  Plaintiff argues that because it did not become aware of the "adverse positions" of the Defendants until 2012 and 2013, it has timely filed suit.  *Id.*  Plaintiff is mistaken.  As the District correctly rebuts, it is well-established in the D.C. Circuit that the "discovery rule is the general accrual rule in federal courts." *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 342 (D.C. Cir. 1991).  Under the discovery rule, a claim for relief accrues at the time the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action. *Id.*  Here, there is no doubt that all of the alleged defects with the transfer to NPS and the assignment to NPF took place long before 2007, when Plaintiff purportedly acquired its interest in the Lease.  Accordingly, Plaintiff had a duty to exercise reasonable diligence with respect to

the terms of that Lease on April 12, 2007, the date on which it allegedly became a party thereto. Because Plaintiff instead waited nearly six years after the date on which it was put on inquiry notice, any claims it may have had against the District in connection with the Lease are three years overdue under D.C. Code § 12-301(7) and (8).

Finally, Plaintiff argues that because all of the defendants in this action continue to the present day to rely upon the (allegedly invalid) transfer of jurisdiction and assignment of the Lease, and their recurring unlawful conduct continues to harm Plaintiff, any applicable statute of limitations – whether it be the six-year FTCA period or the three-year period alleged by the District – starts anew each month.  Pl.'s Opp'n at 9-11.  Plaintiff's final argument is likewise unavailing.  As explained above, all of the conduct and omissions on which Plaintiff relies to frame its challenge under Count I took place between the years of 1985 and 2005, and Plaintiff was put on inquiry notice of the end result of such conduct – namely, the transfer to NPS and the assignment of the Lease to NPF – in 2007.  While the conflict between the Park Defendants and Plaintiff giving rise to Plaintiff's present complaints is perhaps ongoing, Plaintiff has alleged no conduct whatsoever by the *District*, or with respect to the transfer or the assignment, that is recurring in nature.

For all of the foregoing reasons, the Court holds that Plaintiff lacks constitutional standing to request a declaratory judgment that the District "never effectively transferred" administrative jurisdiction to NPS, or if it did, that such jurisdiction has since reverted to the District.  *See* Compl. at 21, ¶ 1(c).  Further, even if Plaintiff did have standing to bring this request, such request would be time-barred under the three-year statute of limitations provided by D.C. Code §§ 12-301(7) and (8).  Although the Court finds that, based on the present record, Plaintiff has constitutional standing to bring its remaining request for declaratory relief against

the District – specifically, that the District "never effectively assigned" the Lease to NPF, *id*. at ¶ 1(b) – this request is also time-barred under D.C. Code §§ 12-301(7) and (8).

Accordingly, the Court shall grant the District's motion to dismiss.

### III. PLAINTIFF'S PRELIMINARY INJUNCTION MOTION

"The standard for issuance of the extraordinary and drastic remedy of a temporary restraining order or a preliminary injunction is very high." *Tolson v. Stanton*, 844 F. Supp. 2d 53, 56 (D.D.C. 2012) (citation omitted); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 21, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) (noting that a preliminary injunction is "an extraordinary remedy" that may only be awarded upon a clear showing that the plaintiff is entitled to such relief. "To prevail," the plaintiff must demonstrate "(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995) (citation omitted).

Historically, these four factors have been evaluated on a "sliding scale" in this Circuit, such that a stronger showing on one factor could make up for a weaker showing on another. *See Davenport v. Int'l Bhd. of Teamsters*, AFL–CIO, 166 F.3d 356, 360–61 (D.C. Cir. 1999). The continued viability of that approach has recently been called into some doubt, as the United States Court of Appeals for the District of Columbia Circuit has suggested, without holding, that a likelihood of success on the merits is an independent, free-standing requirement for a preliminary injunction. *See Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011); *Davis v. PBGC*, 571 F.3d 1288, 1292 (D.C. Cir. 2009). However, absent binding authority or clear guidance from the Court of Appeals, the Court considers the most prudent course to bypass this

unresolved issue and proceed to explain why a preliminary injunction in this case is not appropriate under the "sliding scale" framework.  If a plaintiff cannot meet the less demanding "sliding scale" standard, then it certainly could not satisfy the more stringent standard alluded to by the Court of Appeals.

## A.  Likelihood of Success on the Merits

While Plaintiff's Complaint seeks declaratory relief against all defendants, injunctive relief against the Park Defendants, and compensatory and punitive damages in connection with its tort claims against NPF, Plaintiff's motion seeks more targeted temporary and preliminary injunctive relief against only the Park Defendants.  Specifically, Plaintiff seeks an order restraining and enjoining the Park Defendants from "taking any further actions whatsoever that interfere in any manner with the continuing operation of Jack's Boathouse by [Plaintiff], including without limitation, seeking or threatening to terminate the Lease or evict [Plaintiff] without a Court Order following a final judgment on whether the NPF and/or the NPS have the power and jurisdiction to do so."  Pl.'s Proposed Preliminary Injunction Order, ECF No. [12-2]. Accordingly, the question before the Court on Plaintiff's instant motion is whether Plaintiff is likely to succeed on the merits of its claim that NPF and/or NPS have no legal authority to take action against Plaintiff in connection with its alleged leasehold interest.

"The first component of the likelihood of success on the merits prong usually examines whether the plaintiffs have standing in a given case."  *Barton v. District of Columbia*, 131 F. Supp. 2d 236, 243 (D.D.C. 2001) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998)).  For reasons articulated *supra* Part II.A.1, the Court has already determined that Plaintiff lacks constitutional standing to bring its claim for a declaratory judgment that the District "never effectively transferred" administrative jurisdiction to NPS (or that if it did, such

jurisdiction has since reverted to the District), which Plaintiff asserts against all Defendants collectively. *See* Compl. at 21, ¶ 1(c). However, all other claims falling within the scope of Plaintiff's instant motion – specifically, its requests for declaratory judgments that Plaintiff is a lessee under the Lease; that the Lease was never effectively assigned to NPF and that NPS is not a party to the Lease; that the Park Defendants' decision to terminate the Lease is not permitted by any District of Columbia assignment, resolution, act, letter, or authority; that neither of the Park Defendants have the power or authority to terminate the Lease; and its request for a permanent injunction against the Park Defendants from interfering with the business operations of or evicting Plaintiff – all appear to bear a sufficiently close causal nexus (and would theoretically remedy) the alleged injury to Plaintiff's business interests stemming from the recent conflict with the Park Defendants over its leasehold interest. For this reason, Plaintiff has more likely than not established constitutional standing to bring those claims. *See Lujan*, 504 U.S. at 561 ("irreducible constitutional minimum of standing" requires "injury in fact" that is "fairly traceable" to the defendant's challenged conduct and "likely" to be "redressed by a favorable decision"). While the Park Defendants broadly assert in their combined opposition to Plaintiff's motion/motion to dismiss that Plaintiff lacks constitutional standing to bring all of its claims, it is evident from their reply brief submitted in connection with their motion to dismiss that their standing argument is more accurately described as confined to Plaintiff's underlying attack on the transfer of administrative jurisdiction. *See* Park Defs' Reply at 3. Accordingly, the Court is satisfied, for purposes of the instant request for preliminary relief, that Plaintiff more likely than not has standing to bring its claims against the Park Defendants, save for its request for a declaratory judgment invalidating the transfer of jurisdiction.

In order to succeed on the merits of those claims, Plaintiff must prove both that it is a party to the Lease and that the Park Defendants do not possess the authority to take adverse action against him in connection with its interest in the Lease.  Even assuming *arguendo* that Plaintiff can establish that it does in fact have a leasehold interest in Lot 805 – either as a successor in interest to the Lease or under an implied month-to-month lease resulting from Plaintiff's payment of monthly rental since 2007[5] – the Court finds for the below reasons that Plaintiff has failed to make a sufficient showing that it is likely to prove that NPF or NPS (acting for and with the concurrence of NPF) lack capacity to act under the Lease, including to terminate it.

First and foremost, Plaintiff's allegation that the Lease was never "effectively assigned" to NPF is belied by the documents attached as exhibits to the parties' submissions – most notably, the March 30, 2000 Assignment Agreement between the District and NPF, which Plaintiff submitted with its motion and which evidences the District's full assignment of all of the then-existing leases on the Georgetown Waterfront Park to NPF, and NPF's corresponding "unconditional[ ] assum[ption of] all of the responsibilities, obligations, and liabilities of [the District] under the Lease[.]"  *See* Ex. 19 (Assignment Agreement).  Additionally, the correspondence between NPF and NPS submitted by the Park Defendants in support of its motion demonstrates that shortly prior to the execution of the Assignment Agreement, the NPS directed the NPF to accept the District's assignment of the Lease and also "accept[ed] appointment as [NPF's] agent for purposes of fulfilling all obligations, and pursuing all rights

---

[5] Even this fact, however, is in dispute.  *See* Park Defs' Opp'n at 3; *see also* Pl.'s Mem., Ex. 14 (Press Release entitled "National Park Service Invites Proposals for Georgetown Boat Rental" (Jan. 18, 2013) ("The NPS began working with Mr. Simkin[, Owner of Jack's Canoes & Kayaks, LLC] last year to convert the operation to a concession contract, starting with a non-competitive, short-term agreement, but in the process discovered that the lease had never been legally transferred to him, thus necessitating a competitive process to award a contract.").

and remedies to the terms and provisions of the Lease[], in accordance with [its] terms[.]"  *See* Park Defs' Reply, Ex. 1 (Letter from Terry R. Carlstrom, Regional Director, NPS   to James D. Maddy, NPF President (Sept. 24, 1999)), ECF No. [26-1].  *See also id*., Ex. 2 (Letter from Terry R. Carlstrom, Regional Director, NPS to Hon. Anthony Williams, Mayor of the District of Columbia (Sept. 24, 1999)), ECF No. [26-2] ("The [NPS] hereby requests and authorizes the District of Columbia to assign the Leases to the [NPF] in fulfillment of the obligations of [the 1985 Resolution] and acknowledges and agrees that such assignment to the NPF shall fulfill the obligation of the District of Columbia with respect to assignment of the Leases to the [NPS].").

While Plaintiff alleges that the Assignment Agreement itself is invalid due to a lack of legislative authorization for the assignment to NPF, the Court finds this allegation likewise dubious.  Preliminarily, Plaintiff cites – somewhat misleadingly – to a statement from the Office of Corporation Counsel of the District of Columbia (now the Attorney General's Office) for the assertion that the Assignment Agreement, standing on its own, lacks validity without legislative authorization.  *See* Pl.'s Mem. at 14.  However, the document to which Plaintiff cites indicates that Corporation Counsel opined, "that legislation is necessary to authorize the assignment of leases to the [NPF] *rather than the [NPS]*."  *See* Pl.'s Mem., Ex. 17 (Emergency Resolution (April 4, 2000)) (emphasis added).  The document itself is a District of Columbia Council resolution, which is expressly described as relating to the "need to clarify that the [NPF] can accept the assignment of leases for the NPS *under the transfer of jurisdiction authorized by [the 1985 Resolution]*."  *Id*. (emphasis added).  In other words, while Plaintiff's postulation that the assignment itself would be invalid without authorizing legislation is plausible, an equally if not more plausible interpretation of the cited statement indicates that the legislation was instead

required to amend the 1985 Resolution to ensure that assignment to NPF would fulfill its original terms, thereby satisfying the conditions for the transfer of jurisdiction.

More critically, however, even assuming *arguendo* that Plaintiff is correct that the Assignment Agreement is itself necessarily null and void without authorizing legislation, the record before the Court indicates that there was, in fact, authorizing legislation.   As aforementioned, Plaintiff acknowledges the passing by the District of Columbia Council of two Emergency Resolutions to permit NPF to "accept the assignment of leases [including the Lease] for the [NPS] under the transfer of jurisdiction authorized by [the 1985 Resolution]," but alleges that the Assignment Agreement concerning its Lease was executed at a time after one of the resolutions had expired, and before the other resolution became effective.  *See* Compl. ¶¶ 52-55 & Ex. 17 (Emergency Resolution (April 4, 2000)); Ex. 18 (Emergency Resolution (December 21, 1999)).  However, the Assignment Agreement itself provides as follows:

> WHEREAS, the Council enacted Act No. 13-252, the "Transfer of Jurisdiction over Georgetown Waterfront Park for Public Park and Recreational Purposes, S.O. 84-230, Emergency Act of 1999", effective January 27, 2000, amending the Resolution to authorize the District to assign the Leases to Assignee.

Pl.'s Mem., Ex. 19 (Assignment Agreement).

Curiously, neither party has directed the Court's attention to the referenced legislation, but the publicly available act corroborates this provision.  *See* D.C. Act 13-252 (January 27, 2000) ("The phrase 'National Park Service' in section 3(7) of [the 1985 Resolution] includes the 'National Park Foundation for the benefit of the National Park Service.'")  This given, Plaintiff's allegations that the execution of the Assignment Agreement was an *ultra vires* transaction and consequently inoperative are unlikely to be sustained upon an adjudication on the merits.

Beyond its allegations of a want of authorizing legislation, the *only* other support Plaintiff proffers for its claim that NPF is not its proper lessor is its far-reaching challenge to the whole

transfer of jurisdiction process.  As the Park Defendants accurately contend, the near entirety of Plaintiff's Complaint appears to rest on a theory that the Park Defendants somehow do not have the capacity to terminate the Lease because NPS never acquired administrative jurisdiction over any of the Georgetown Waterfront Park from the District.  Park Defs' Reply at 3.  However, as explained at length in the context of the Court's ruling on the District's motion to dismiss, *see supra* Part II, because Plaintiff has failed to show that the procedural infirmities that allegedly infected the broader transfer process relate to the validity of the assignment or to any other of Plaintiff's asserted interests, Plaintiff lacks standing to challenge the status of NPF as its lessor on this ground.

Finally, even putting aside all evidentiary and standing barriers – as a contractual and indeed equitable matter, the record presently before the Court would likely support a finding that to the extent Plaintiff or its alleged predecessors-in-interest ever had valid grounds to object to the transfer of jurisdiction or the assignment of the Lease, such objections have since been waived.  Neither of Plaintiff's two purported predecessors are alleged to have challenged either transaction when originally executed.  Further, Plaintiff itself, by objecting to neither the transfer nor the Lease assignment upon acquiring the claimed leasehold interest and by paying monthly rent checks to the NPF since its incorporation in 2007, *see* Compl. ¶¶ 30-31, has in all likelihood waived any challenge it may have initially had regarding the status of the NPF as its lessor.  *See Acme Process Equip. Co. v. United* States, 347 F.2d 509, 515-518 (Ct. Cl. 1965), *rev'd on other* grounds, 385 U.S. 138, 87 S. Ct. 350, 17 L.Ed.2d 249 (1966) (holding that a contracting party was barred from enforcing a material breach that it had for too long allowed to go unprotested); *accord Dean v. Garland*, 779 A.2d 911, 916 (D.C. 2001) (where defrauded party affirms the

contract through continued performance despite knowledge of breach, that party is precluded for seeking rescission).

Having established that Plaintiff is unlikely to succeed on the merits of a claim that NPF is not its lessor, the Court shall turn lastly to Plaintiff's request for an injunction specifically precluding the Park Defendants from terminating its Lease or causing it to vacate Lot 805. This request need not detain the Court long. While Plaintiff vaguely alleges that the Lease is "indefinite," *see* Pl.'s Aff. ¶ 4, the Lease itself – a copy of which Plaintiff attached to its motion – unequivocally indicates that it is a "temporary," "*month-to-month*" lease. Pl.'s Mem., Ex. 4 (Lease) at 1 (emphasis added). The Lease also expressly provides that "if no default occurs on the part of the Lessee, then he shall be entitled to thirty (30) days' notice to vacate the premises, which notice shall be given in writing at least thirty (30) days before said occupancy is intended to be terminated." *Id*. at 3-4.

Plaintiff's ability to successfully dispute that it has already received the notice required under the terms of the Lease is extremely doubtful, as the Complaint itself states that "[o]n January 18, 2013, the NPS provided a letter to [Plaintiff] … informing [Plaintiff] that the NPS intended to terminate the Lease upon execution of a concessions contract by the end of February 2013." Compl. ¶ 36. *See also* Pl.'s Mem., Ex. 13 (Letter from Stephen E. Whitesell, NPS Regional Director, to Paul Simkin, Owner of Jack's Canoes and Kayaks, LLC (Jan. 18, 2013)) (indicating that the NPF concurs with this action)). Furthermore, it is undisputed that on March 1, 2013, the NPS sent Plaintiff a letter (which the NPF President signed in concurrence), providing thirty-seven days' notice of termination. *See* Pl.'s Emerg. Mot. and Mem. for Contempt, ECF No. [15], Ex., at 6 (Letter from Stephen E. Whitesell, NPS Regional Director, to Paul Simkin, Owner of Jack's Canoes and Kayaks, LLC (March 1, 2013)). The language of the

March 1, 2013 letter is unequivocal: "This letter serves as notice to Jack's Canoes & Kayaks, LLC, to terminate its occupancy of the premises at Lot 805 in Square 1179 on or before 11:59 p.m. on April 7, 2013[.]" *Id.*

Plaintiff argues that the Park Defendants' decision, as stated in the above correspondence to terminate the Lease and install a concessionaire without a court order amounts to a "self-help eviction," which is illegal under District of Columbia law. Pl.'s Mem. at 11-12 (citing *Mendes v. Johnson*, 389 A.2d 781, 787 (D.C. 1978); *Young v. District of Columbia*, 752 A.2d 138 (D.C. App. 2000)). The Park Defendants contend that federal common law and general principles of common landlord-tenant law apply to the Lease – not any specific provisions of the District of Columbia Code. Park Defs' Opp'n at 18. Ultimately, the Court need not, and shall not, resolve the parties' dispute on this issue, as Plaintiff's allegations of "self-help" eviction are not ripe. The Park Defendants have provided Plaintiff a notice to vacate by April 7, 2013, in accordance with the notice provisions of the Lease. Any claim regarding what the Park Defendants may or may not do after that date to enforce their alleged right to possession of the premises is simply too speculative to state a claim for relief.

For all of the foregoing reasons, the "likelihood of success on the merits" factors weighs heavily against granting Plaintiff the requested preliminary injunctive relief.

**B.  Irreparable Injury**

To establish irreparable harm, a plaintiff must show that its injury is "great, actual, and imminent." *Hi–Tech Pharmacal Co. v. U.S. Food & Drug Admin.,* 587 F. Supp. 2d 1, 11 (D.D.C. 2008). Plaintiff must also "demonstrate irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). Further, the law of this Circuit is clear that economic loss, in and of itself, does not constitute irreparable harm. *Wis. Gas Co. v.*

*Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985).  "Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business."  *Id.*

Here, Plaintiff contends that if the Court does not grant the requested preliminary relief, the "very existence" of its business will be destroyed.  Pl's Mem. at 3; *see also* Pl's Aff. ¶¶ 20-22.  Specifically, Plaintiff asserts that there is no other place on the Potomac River where its business could be operated.  Pl.'s Aff. ¶ 20.  Plaintiff further asserts that if it is forced to vacate the premises, leaving behind all fixtures and equipment that it has spent hundreds of thousands of dollars purchasing, repairing, and developing, it will be financially foreclosed from acquiring such equipment and resuming its business elsewhere. *Id.* ¶¶ 20, 22.  This is because, as Plaintiff explains, much of the equipment – for example, custom-built deck and dock structures – is not usable at any other location and/or cannot be removed from the property without being destroyed. *Id.* ¶ 20; Pl.'s Mem. at 20.

As the Park Defendants appropriately retort, however, Plaintiff's submissions seem to imply that Plaintiff possesses a larger leasehold interest than it possibly could.  Park Defendants' Opp'n at 17.  At best, Plaintiff is, as it claims to be, a successor to the Lease – the terms of which Plaintiff has not and could not dispute unequivocally provide for a "month-to-month tenancy." *See* Pl.'s Mem., Ex. 4 (Lease) at 1.  Irrespective of the identity of Plaintiff's lessor, since the day Plaintiff alleges to have acquired the Lease almost six years ago, Plaintiff has faced the possibility of termination of its possession of Lot 805 upon thirty-days notice.  While the Court does not doubt that financial difficulty may befall Plaintiff if it is forced to vacate and leave behind certain fixtures on the premises, the fact remains that at the time Plaintiff made those alleged investments, Plaintiff was on inquiry notice that at most, it possessed a month to moth

claim to its occupancy of the premises.  Accordingly, the Court cannot conclude that the alleged injury is sufficiently severe to constitute irreparable harm.

Additionally, it bears mention that Plaintiff knew of NPS's plans to convert the operations at the premises to a concessions contract as of no later than August 2012, *see* Compl. ¶ 32, and indeed had the opportunity to apply for the RFQ but elected not to do so, precluding the possibility that NPS would select Plaintiff as the concessionaire going forward.  Further, Plaintiff inexplicably waited an entire month after having received notice of NPS's notice of termination before filing the request for temporary and preliminary relief presently before the Court.  Plaintiff's delay and its decision not to apply for the RFQ undermine any argument that its injury is of "such imminence that there is a 'clear and present need for equitable relief to prevent irreparable harm.'"  *See Brown v. District of Columbia*, 888 F. Supp. 2d 28, 32 (D.D.C. 2012) (quoting *Fed. Maritime Comm'n v. City of Los Angeles*, 607 F. Supp. 2d 192, 202 (D.D.C. 2009)).

"A showing of irreparable harm is the *sine qua non* of the preliminary injunction inquiry."  *Trudeau v. FTC*, 384 F. Supp. 2d 281, 296 (D.D.C. 2005), *aff'd*, 446 F.3d 178 (D.C. Cir. 2006).  For the reasons stated above, the Court finds that Plaintiff has failed to make the requisite showing here.  Accordingly, this factor also weighs against the issuance of a preliminary injunction.

## C.  Injury to Other Interested Parties and Public Interest

Finally, a plaintiff seeking a preliminary injunction must establish that the balance of the equities tips in its favor, and that an injunction would be in the public interest.  *Winter*, 55 U.S. at 20.  The Court doubts that even the most compelling showing in this regard could compensate for Plaintiff's failure to demonstrate a likelihood of success on the merits or irreparable harm.

Even so, the Court finds that the equities and the public interest also weigh against the issuance of a preliminary injunction in this case, as granting Plaintiff the requested relief would usurp the NPS's determination that, in order to abide by its statutory mandate to provide services to visitors on national park lands under carefully controlled safeguards, the provision of non-motorized boat rental and storage shall be performed under a concessions contract. Further, there will be no injury to other interested parties, as the availability of boat rental and storage on the premises will continue into the future through the operations of the selected concessionaire.

## IV. CONCLUSION

Considering the record as a whole, the Court finds that Plaintiff has failed to make a "clear showing" that it is entitled to the "extraordinary remedy" of a preliminary injunction. *Winter*, 555 U.S. at 21. Therefore, and for the reasons set forth above, Plaintiff's [12] Motion for Temporary Restraining Order and Preliminary Injunction is DENIED.

Further, because Plaintiff lacks constitutional standing to request a declaratory judgment that the District "never effectively transferred" administrative jurisdiction to NPS, or if it did, that such jurisdiction has since reverted to the District, *see* Compl. at 21, ¶ 1(c), and because Plaintiff is also barred by the applicable statute of limitations from asserting the entirety of its request for declaratory relief against the District, the Court shall GRANT the District's [19] Motion to Dismiss.

The Court shall address the Park Defendants' [22] Motion to Dismiss by separate order at a later date.

An appropriate order accompanies this Memorandum Opinion.

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge