**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JACK'S CANOES & KAYAKS, LLC,

        Plaintiff,

     v.

NATIONAL PARK SERVICE, and
NATIONAL PARK FOUNDATION,

        Defendants.

**Civil Action No.** 13-00130 **(CKK)**

**MEMORANDUM OPINION**
(April 8, 2013)

Plaintiff Jack's Canoes & Kayaks, LLC ("Plaintiff") filed suit against the National Park Service ("NPS"), the National Park Foundation ("NPF"), and the District of Columbia ("District") relating to purportedly illegal attempts by the NPS and NPF (together the "Park Defendants") to terminate a lease under which Plaintiff claims to have been a tenant since April 2007. *See* Compl., ECF No. [1]. Presently before the Court is the Park Defendants' [22] Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. Upon consideration of the parties' submissions, the relevant authorities, and the record as a whole, the Court shall GRANT-IN-PART and DENY-IN-PART the Park Defendants' motion to dismiss.[1]

---

[1] While the Court renders its decision on the entire record before it, its consideration has focused on the following documents: Compl., ECF No. [1]; Pl's Mot. for Temporary Restraining Order and Preliminary Injunction & Mem. of P. & A. in Supp. of Mot. ("Pl.'s Mem."), ECF No. [12]; Defs' NPS & NPF's Opp'n to Pl.'s Mot. for Temporary Restraining Order and Preliminary Injunction & Mot. to Dismiss ("Park Defs' Mem."), ECF No. [21]; Pl.'s Mem. of P. & A. in Reply to NPS & NPF's Opp'n to Pl.'s Mot. for Temporary Restraining Order and Preliminary

Specifically, the Court agrees that Plaintiff lacks constitutional standing to request a declaratory judgment that jurisdiction for administration and maintenance of the Georgetown Waterfront Park, including the lot in which Plaintiff asserts a leasehold interest, was never effectively transferred by the District to NPS (or that if it was, such jurisdiction has since reverted to the District). Accordingly, the Court shall GRANT the Park Defendants' motion to dismiss insofar as it requests dismissal of Plaintiff's request for a declaratory judgment invalidating this transfer of jurisdiction.

Because the Court finds based on the present record that Plaintiff possesses standing to pursue the remainder of its claims against the Park Defendants, the Court shall DENY the Park Defendants' motion to dismiss those claims on standing grounds.

The Park Defendants' motion is also DENIED insofar as it seeks dismissal of Plaintiff's tort claims against NPF, as the Court finds that NPF, a 501(c)(3) non-governmental organization, is not entitled to sovereign immunity for those claims. Although the close relationship between NPS and NPF warrants like analysis of Plaintiff's claims against them for many purposes, the Park Defendants have improperly amalgamated the two entities for purposes of their sovereign immunity analysis.

Finally, in the course of considering the remainder of the arguments asserted in the Park Defendants' motion, the Court has found that the parties' pleadings are not in direct conversation in certain key respects. The Court has taken pains to determine the applicability of the Park Defendants' arguments to Plaintiff's Complaint but ultimately cannot do so due to Plaintiff's failure, both in its Complaint and briefing, to adequately articulate the legal and factual grounds

---

Injunction and in Opp'n to their Mot. to Dismiss Pl.'s Complaint ("Pl.'s Opp'n"), ECF No. [24]; Defs' NPS & NPF's Reply in Supp. of Mot. to Dismiss Pl.'s Complaint ("Park Defs' Reply"), ECF No. [26]. In an exercise of its discretion, the Court finds that holding oral argument on the instant motion would not be of assistance in rendering a decision. *See* LCvR 7(f).

for its claims.  For this reason, the Court shall require Plaintiff to file a notice with the Court which shall clarify the precise contours of the claims Plaintiff intends to pursue in this action, in accordance with the specific instructions set forth in this Memorandum Opinion and accompanying Order.   Accordingly, the Court shall DENY-WITHOUT-PREJUDICE the remainder of the Park Defendants' motion to dismiss, with leave to re-file after tailoring the motion to speak to the claims and arguments that Plaintiff actually intends to pursue in this action.

## I. BACKGROUND

The Court shall restate the factual and procedural background of this case as set forth in its [29] March 28, 2013 Memorandum Opinion, to the extent here relevant.  Unless otherwise indicated, all facts set forth below are taken from Plaintiff's Complaint and are presumed true for purposes of the Court's consideration of the instant motion.

Since April 2007, when Plaintiff was incorporated as a limited liability corporation, Plaintiff has operated a boathouse business offering canoe and kayak rentals, tours, storage, and other related services at 3500 K St. N.W., Washington, D.C. Compl. ¶¶ 9, 17, 30.  Plaintiff's operations occur on two adjacent parcels of land on the Georgetown Waterfront: Lot 806 (which Plaintiff owns) and Lot 805 (which is owned by the District but managed by NPS pursuant to a transfer of administrative jurisdiction over several acres of land that constitute the Georgetown Waterfront Park).  *See* Compl. ¶¶ 9, 12, 23-28.

By way of background, Plaintiff succeeded an individual by the name of Frank Baxter in the ownership and operation of the business that was started by Frank Baxter's mother and father, John and Norma Baxter, in 1945.  *Id*. ¶ 19.  In 1973, as part of a compromise with the District, which wanted to take Lot 805 for the construction of Whitehurst Freeway, the District

agreed to buy Lot 805 from John and Norma Baxter and to lease it back to them so that they could continue to own and operate the boathouse.  *Id.* ¶ 20.  On August 28, 1973, John and Norma Baxter deeded Lot 805 in fee simple to the District for $244,160.00.  *Id.* ¶ 21.  On October 1, 1973, the District and the Baxters entered into a lease with respect to Lot 805 (the "Lease").  *Id.* & Pl.'s Mem., Ex. 4 (Lease).

The Lease, the "express purpose" of which is described as "permitting a temporary lease of the hereinafter described premises" by the Baxters for boat rentals and related activities, states in pertinent part: "[T]he District does hereby grant unto the Lessee, use and occupancy of [Lot 805], commencing October 1, 1973 and continuing thereafter from month to month for sum of $275.00 ($275.00) per month[.]"  Pl.'s Mem., Ex. 4 (Lease), at 1.  Beginning April 1, 1982, the monthly payment amount increased to $356.00 pursuant to a letter amendment to the Lease sent by the District and countersigned by John and Norma Baxter.  *Id.* at 5.

On September 10, 1985, the District of Columbia Council passed Resolution 6-284 (the "1985 Resolution"), which was intended to initiate a transfer of administrative jurisdiction over a number of land parcels on the Georgetown Waterfront, including Lot 805, to the NPS for the purpose of establishing and maintaining the Georgetown Waterfront Park.  Compl. ¶ 24 & Pl.'s Mem., Ex. 7 (D.C. Council Resolution 6-284 (Sept. 10, 1985)).  The 1985 Resolution states, in relevant part, that "Jurisdiction over … Lot … 805 … shall be transferred to the National Park Service 5 years after the effective date of this resolution unless … suitable sites and facilities have not been obtained for the relocation of those public works facilities now located on the parcels of land that are part of the Georgetown Waterfront Park."  Pl.'s Mem., Ex. 7 (D.C. Council Resolution 6-284 (Sept. 10, 1985)), at 2.  The 1985 Resolution further states that it is "contingent upon an exchange of letters" between the District of Columbia Mayor and the

Regional Director of NPS, which were to memorialize the agreement on several matters – including, *inter alia*, that the transferred land be used only for public park and related purposes; that the District assign its existing leases on the land to the NPS and the NPS dedicate all revenues from those leases to park development; and that NPS assume responsibility to repair and maintain all wharves, piers, bulkheads, and similar structures located on the transferred land. *Id.* at 3-4.  The letters were also to include "conditions, including a reversion of jurisdiction to the District … which fully protect the District … in the event … of …an [a]mendment or cancellation of [a] January 7, 1985 deed [of easements] between Washington Harbour Associates [a District of Columbia partnership], Georgetown Potomac Company, Mount Clare Properties (D.C.) Inc., and the United States of America[.]"  *Id.* at 3.

A letter agreement from the NPS dated May 18, 1987 and countersigned by the District of Columbia Mayor on July 2, 1987 (the "1987 Letter") set forth the parties' agreements to the conditions of transfer stated in the 1985 Resolution.  *See* Pl.'s Mem. Ex. 8 (Letter from Manus J. Fish, NPS Regional Director to Hon. Marion S. Barry, Mayor of the District of Columbia (May 18, 1987)).  According to both the District and the Park Defendants, the actual transfer of administrative jurisdiction was properly executed in 1999.  *See* Park Defs' Opp'n at 3-4.  For reasons described more fully *infra* Part III.A.2, Plaintiff contends that the transfer process was "procedurally flawed."  *See* Pl.'s Mem. at 6.

Although both the 1985 Resolution and the 1987 Letter indicate an agreement by the District to assign the Lease to *NPS* at an undetermined future date, no such direct assignment ever occurred.  Instead, on March 30, 2000, the District executed an assignment agreement ("Assignment Agreement") assigning all of the existing District leases on the land to *NPF*.  *See* Pl.'s Mem., Ex. 19 (Assignment of Leases Agreement (March 30, 2000)).  NPF is a 501(c)(3)

non-profit organization that was chartered by Congress in 1967, for the purpose of accepting

private gifts "for the benefit of, or in connection with, the National Park Service, its activities, or

its services."  An Act to Establish the National Park Foundation, Pub. L. No. 90-209 (1967).  The

Assignment Agreement states, in pertinent part:

> WHEREAS, one of the conditions set forth in the [1985] Resolution was the
> assignment by the District to NPS of existing District leases at Georgetown Park, and a
> commitment by NPS to use the lease revenues for park development and maintenance
> at the Georgetown Park; and … because NPS has determined that revenues received by
> NPS from the Leases could not be dedicated for development and maintenance of
> Georgetown Park, NPS requested that the District assign the Leases to Assignee … The
> District does hereby assign the Leases to Assignee.  Assignee does hereby accept the
> Leases and does unconditionally assume all of the responsibilities, obligations, and
> liabilities of Assignor under the Lease, including any and all outstanding obligations
> and liabilities of Assignor.

*Id*.

The Assignment Agreement cites as authority the District of Columbia Council Act No.

13-252, titled the "Transfer of Jurisdiction over Georgetown Waterfront Park for Public Park and

Recreational Purposes, S.O. 84-230, Emergency Act of 1999," effective January 27, 2000, which

the Agreement describes as having amended the Resolution to authorize the District to assign the

leases to NPF.  *Id*.  Earlier correspondence between NPS and NPF indicates that NPS directed

NPF to accept the District's assignment of the Lease and that NPS also "accept[ed] appointment

as [NPF's] agent for purposes of fulfilling all obligations, and pursuing all rights and remedies to

the terms and provisions of the Lease[], in accordance with [its] terms[.]"  *See* Park Defs' Reply,

Ex. 1 (Letter from Terry R. Carlstrom, Regional Director, NPS to James D. Maddy, NPF

President (Sept. 24, 1999)), ECF No. [26-1].

In 2007, upon Plaintiff's incorporation, Frank Baxter – successor in interest to John and

Norma Baxter and an owner of the business until his death in 2009 – transferred all of his right,

title and interest in the corporation, including the lease over Lot 805, to Plaintiff.  *See* Pl.'s Mem.

at 4 & Ex. 1 (Operating Agreement of Jack's Canoes & Kayaks, LLC).  Mr. Baxter also deeded Lot 806 to Plaintiff on April 15, 2009, prior to his death later that year.  Compl. ¶ 22.  According to Plaintiff, since its incorporation in 2007, Plaintiff has been paying rent to NPF on time and on a monthly basis (in the amount of $356.00 per month pursuant to the Lease as amended by the 1982 letter agreement between the District and the Baxters).  Compl ¶ 30.  *See also* Park Defs' Mem. at 3.  While NPF regularly cashed Plaintiff's rent checks between 2007 and August 2012, NPF stopped cashing Plaintiff's rent checks from August 2012 through January 2013, the month Plaintiff filed its Complaint.  *Id*. ¶ 31.

According to the Park Defendants, sometime prior to August 2012, NPS had determined that, in keeping with its Congressional mandate, the non-motorized boat service provided at the site operated by Plaintiff needed to be performed under a concessions contract instead of a lease. *See* Park Defs' Mem. at 2 (explaining that Congress has mandated, absent specific exceptions not applicable to this case, that "the Secretary shall utilize concessions contracts to authorize a person, corporation, or other entity to provide accommodations, facilities, and services to visitors to units of the National Park System") (citing 16 U.S.C. § 5952).  According to Plaintiff, in August 2012, NPS sent Plaintiff a draft concessions contract for continued operation of its boathouse business, Compl. ¶ 32, but ceased communications with Plaintiff on the subject of a concessions contract in October 2012, and no agreement was reached, *id*. ¶ 33.

By letter dated December 18, 2012, the Regional Director of NPS provided Plaintiff "notice … to terminate its occupancy of the leased premises. . . . [and to] vacate the property on or before 11:59 p.m. on January 31, 2013, and remove all personal property from the premises." Compl. ¶ 34 & Pl.'s Mem., Ex. 11 (Letter from Stephen E. Whitesell, NPS Regional Director to Paul Simkin, Owner of Jack's Canoes and Kayaks, LLC (Dec. 18, 2012)).   An NPF

representative signed the letter in concurrence, in its capacity as the successor lessor under the Lease. *See* Pl.'s Mem., Ex. 11 (Letter from Stephen E. Whitesell, NPS Regional Director to Paul Simkin, Owner of Jack's Canoes and Kayaks, LLC (Dec. 18, 2012)).   One week later, in a December 24, 2012 email, the NPS Director notified Plaintiff that, due to public concern about the future of the boathouse, NPS had decided to withhold further action on the termination of the Lease until NPS could conduct a more thorough review and determine the best course of action. Compl. ¶ 35.

On January 18, 2013, NPS issued a letter to Plaintiff, withdrawing its December 18, 2012 letter and informing Plaintiff that the NPS intended to terminate the Lease upon execution of a concessions contract by the end of February 2013.  *Id*. ¶ 36 & Pl.'s Mem., Ex. 13 (Letter from Stephen E. Whitesell, NPS Regional Director to Paul Simkin, Owner of Jack's Canoes and Kayaks, LLC (Jan. 18, 2013)).  The letter again indicated NPF's concurrence with this decision. Pl.'s Mem., Ex. 13 (Letter from Stephen E. Whitesell, NPS Regional Director to Paul Simkin, Owner of Jack's Canoes and Kayaks, LLC (Jan. 18, 2013)).  The letter further notified Plaintiff that on that same date, January 18, 2013, NPS was releasing a Request for Qualifications (RFQ) for non-motorized boat rental and storage services at or near the location of Plaintiff's present operation.  *Id*.  The letter indicated that NPS would evaluate all responsive proposals, including Plaintiff's should it wish to submit one, in a fair and consistent fashion.  *Id*.  The deadline to respond to the RFQ was February 6, 2013.  *Id*.  As the parties later represented to the Court during a February 19, 2013 on-the-record telephone conference, Plaintiff chose not to submit a response to the RFQ.

On January 31, 2013 – thirteen days after the Park Defendants issued the lease termination letter – Plaintiff filed its Complaint in this matter. *See* Compl. The Complaint asserts the following five counts:

(i) **Declaratory Judgment** (against the Park Defendants and the District[2]).

> Plaintiff seeks a series of declarations under this count – specifically that:

> (a) Plaintiff is a lessee under the Lease;

> (b) The Lease was never effectively assigned to NPF, and NPS is not a party to the Lease;

> (c) Jurisdiction for administration and maintenance over Lot 805 was never effectively transferred by the District of Columbia to NPS, or, if it was, such jurisdiction has reverted to the District of Columbia;

> (d) The NPS and NPF decision to terminate the Lease and evict Plaintiff in order for NPS to grant a concessions contract are not permitted by any District of Columbia assignment, resolution, act, letter, or authority; and

> (e) Neither the NPF nor the NPS have the power or authority to terminate the Lease.

(ii) **Injunctive Relief** (against the Park Defendants)

> Plaintiff requests that the Court enjoin the Park Defendants from taking any further actions that interfere with the continuing operation of the boathouse by Plaintiff, including seeking to terminate the Lease or evict Plaintiff without a Court Order following this Court's determination as to whether NPF and/or NPS have the power and jurisdiction to do so;

(iii) **Intentional Interference with Business Relations** (against NPF)

(iv) **Conspiracy to Carry Out an Unlawful Eviction and Interfere with Plaintiff's Business Relations** (against NPF); and

(v) **Negligent Interference with Business Relations** (against NPF).

*See* Compl. at 11-23.

---

[2] The Court previously dismissed Count One, insofar as it sought declaratory relief against the District. *See* Mem. Op. (Mar. 28, 2013), ECF No. [29].

On February 18, 2013 – seventeen days after Plaintiff filed its Complaint and exactly one month after the Park Defendants issued the lease termination letter – Plaintiff filed a [12] Motion for Temporary Restraining Order and Preliminary Injunction, which sought an order barring the Park Defendants from taking any actions that interfere with the continuing operation of Plaintiff's boathouse business, including seeking or threatening to terminate the Lease or evicting Plaintiff without a Court Order following a final judgment on whether the NPF and/or the NPS have the power and jurisdiction to do so.  The Court held a telephonic status conference with the parties on February 19, 2013, during which the Park Defendants indicated their agreement not to take any action against Plaintiff in connection with its asserted leasehold interest until after March 31, 2013.  *See* Min. Order (Feb. 19, 2013).  During the telephone conference, both the Park Defendants and the District also indicated their intent to move to dismiss Plaintiff's Complaint against them.  The Court ordered the parties to jointly propose a briefing schedule for Plaintiff's motion for a temporary restraining order and preliminary injunction and the Defendants' respective motions to dismiss and subsequently granted the schedule requested.[3]  *See id*.

On March 28, 2013, the Court issued a [29] Memorandum Opinion and [28] Order denying Plaintiff's motion for temporary and preliminary injunctive relief.  The Court's March 28, 2013 Memorandum Opinion and Order also granted the District's motion to dismiss, finding

---

[3] The Court's February 19, 2013 Minute Order further stated that, in agreeing to withhold action until March 31, 2013 and in proposing the briefing schedule, the parties necessarily agreed, and the Court itself determined, that a ruling on Plaintiff's application for preliminary injunctive relief beyond the twenty-one day timeline set forth in Local Civil Rule 65.1(d) would not prejudice the parties. *See* LCvR 65.1(d) ("On request of the moving party … a hearing on an application for preliminary injunction shall be set by the court no later than 21 days after its filing, unless the court earlier decides the motion on the papers or makes a finding that a later hearing date will not prejudice the parties. The practice in this jurisdiction is to decide preliminary injunction motions without live testimony where possible.").

that Plaintiff lacked constitutional standing with respect to one of its requests for declaratory judgment against the District, and was barred by the applicable statute of limitations from asserting the entirety of its request for declaratory relief against the District.  The Court indicated in its March 28, 2013 Memorandum Opinion that it would address the Park Defendants' motion to dismiss by separate order at a later time.

On March 29, 2013, Plaintiff filed a [30] Notice of Appeal, appealing the Court's March 28, 2013 Order denying its motion for a temporary restraining order and preliminary injunction. Because an appeal under 28 U.S.C. § 1292(a)(1) from an interlocutory order involving a preliminary injunction does not divest the district court with jurisdiction to proceed with a decision on the merits, absent a stay order issued by the Court of Appeals, the Court may proceed with the merits of the Park Defendants' motion to dismiss.  *See Ex parte National Enameling & Stamping Co.*, 201 U.S. 156, 162, 26 S. Ct. 404, 50 L. Ed. 707 (1906); *cf. United States v. Defries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997) ("The filing of a notice of appeal, including an interlocutory appeal, 'confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal.'") (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 402, 74 L. Ed. 2d 225 (1982) (per curiam)).

## II.  LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1)

A court must dismiss a case pursuant to Rule 12(b)(1) when it lacks subject matter jurisdiction.  In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground*

*Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); see also *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted). Further, in spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

**B. Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss on the grounds that the complaint "fail[s] to state a claim upon which relief can be granted." A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED .R. CIV. P. (8)(a), "in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of

the elements of a cause of action." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

In evaluating a Rule 12(b)(6) motion to dismiss, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties]." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted). The court must view the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). While the court must construe the complaint in the plaintiff's favor, it "need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Moreover, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted); *accord Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).

# III. DISCUSSION

The Park Defendants make several arguments in support of their motion to dismiss. The Court shall first address their argument that Plaintiff lacks standing to bring this action against them. *See* Park Defs' Mem. at 13-16. The Court shall then turn to their argument that because Plaintiff has failed to exhaust its administrative remedies under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), it has failed to plead an adequate waiver of sovereign immunity for its tort claims and the Court therefore lacks jurisdiction over those claims. *See id.* at 11-13. Finally, the Court shall explain why it is unable on the record presently before it to address the remainder of the Park Defendants arguments – namely, that Plaintiff's Complaint must be dismissed as time-barred, *see id.* at 16; that Plaintiff has waived any challenge it may have had to the assignment of the Lease, *see id.* at 15; Park Defs' Reply at 5-6; and that Plaintiff's Complaint fails to state a claim upon which relief can be granted, *see* Park Defs' Mem. at at 17-19.

## A. Plaintiff lacks standing to seek a declaratory judgment challenging the transfer of administrative jurisdiction over the Georgetown Waterfront Park to NPS, but based on the present record, possesses standing to bring the remainder of its claims against the Park Defendants.

Article III of the Constitution limits the authority of federal courts to the resolution of "Cases" and "Controversies." U.S. Const. art. III, § 2. "This limitation is no mere formality: it 'defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded.'" *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012) (quoting *Allen v. Wright*, 468 U.S. 737, 750, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984)). "The Court begins with the presumption that it does not have subject matter jurisdiction over a case." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed.2d 391 (1994).

14

To establish the jurisdictional prerequisite of constitutional standing, Plaintiff must first show that it has suffered an "injury in fact," that is, the violation of a legally protected interest that is "(a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citations and internal quotations omitted).   Second, "there must be a causal connection between the injury and the conduct complained of." *Id.*   Stated differently, the injury must be "fairly traceable to the defendant's allegedly unlawful conduct." *Allen*, 468 U.S. at 751. Third, it must be "likely" that the injury would be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976)).

Here, the Park Defendants argue that Plaintiff lacks standing to bring any action based upon the terms of the Lease because Plaintiff was not a party to any express lease between the District and its former business partner's parents.   Park Defs' Mem. at 14-15.   The Park Defendants also argue that Plaintiff lacks standing to bring any claims challenging the transfer of administrative jurisdiction from the District to NPS.   *Id.* at 13-14.   *See also id.* at 13, n.3 (expressing intent to also join in the District's arguments related to Plaintiff's inability to satisfy constitutional standing).   The Court shall address both arguments in turn.

1. **The Park Defendants' argument that Plaintiff is not a party to the Lease is not properly considered on a Rule 12(b)(1) motion to dismiss for lack of standing.**

The Park Defendants argue that because Plaintiff was not a party to any express lease between the District and Plaintiff's former business partner's parents, it cannot bring any action based upon the terms of the Lease.   Park Defs' Mem. at 14-15.   This argument need not detain the Court long.   Although the Complaint itself does not plead how, exactly, Plaintiff became a party to the Lease, it does allege that Plaintiff is a lessee under the Lease and that it has been

paying rent to NPF on time and on a monthly basis pursuant to the Lease since its incorporation in 2007. *See* Compl. ¶ 30; *id*. at 21. *See also* Pl.'s Mem. at 4 (contending that Frank Baxter transferred all of his right, title and interest in Jack's Boathouse, including the Lease, to Jack's LLC upon its incorporation in 2007). Because it is well-established that the merits of a plaintiff's case must be assumed when considering standing, *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 658 (D.C. Cir. 2010), the Court must accept as true for present purposes Plaintiff's allegations that it is a party to the Lease and must reject the Park Defendants' contention to the contrary as not properly considered in ruling on a motion to dismiss.

**2. Plaintiff lacks constitutional standing to seek a declaratory judgment invalidating the transfer of administrative jurisdiction.**

The Park Defendants also argue that Plaintiff lacks standing to assert a challenge to the transfer of administrative jurisdiction of various Georgetown waterfront parcels of land, including Lot 805, between the District and NPS. For the same reasons stated in the Court's [29] March 28, 2013 Memorandum Opinion dismissing Plaintiff's declaratory judgment claims against the District, the Court agrees that Plaintiff does not have constitutional standing to seek a declaration that jurisdiction for administration and maintenance of Lot 805 was never effectively transferred by the District to NPS, or, alternatively, if it was, that such jurisdiction has since reverted to the District. For ease of reference, and because the rationale articulated in the Court's prior Memorandum Opinion applies with equal force to both the District and the Park Defendants, the Court shall restate below the relevant excerpts from that Memorandum Opinion. As background, the Court first explained:

> At bottom, Plaintiff alleges that the process by which the administrative jurisdiction over the Georgetown Waterfront Park was transferred to NPS suffered from several defects such that it was never effectively transferred, *see* [Compl.] ¶¶ 39-57, or, alternatively, if it was effectively transferred, a supplemental deed of easements entered

into in 2005 should have triggered revision of jurisdiction back to the District under the terms of the 1985 Resolution and 1987 Letter[.] … *Id*. ¶44.

According to Plaintiff, the practical upshot of the defective transfer process is that the Park Defendants are left "with no standing to evict the Plaintiff, much less negotiate a new lease agreement." Pl.'s Mem. at 12. In other words, the entirety of Plaintiff's case against the District appears to be premised upon a theory that because the transfer of administrative jurisdiction was never properly executed (and because the assignment of the Lease to NPF was a part of that broader transfer process), NPF is not actually Plaintiff's lessor. Therefore, Plaintiff contends that neither NPF nor NPS (acting for and with the concurrence of NPF), has legal capacity to take any action against Plaintiff in connection with its claimed leasehold interest in Lot 805. As aforementioned, neither the District nor the Park Defendants contest the validity of NPS's administrative jurisdiction over the real property that constitutes the Georgetown Waterfront Park.

Mem. Op. (Mar. 28, 2013), ECF No. [29], at 10.

In determining that Plaintiff lacks constitutional standing to challenge the transfer of

administrative jurisdiction from the District to NPS, the Court reasoned as follows:

The only injury alleged by Plaintiff – both in its Complaint and other submissions – relates to the purported destruction of its business interests, including its alleged interest in the Lease. *See generally* Compl.; Pl.'s Aff. [in Supp. of Mot. for Temporary Restraining Order and Preliminary Injunction, ECF No. [12-3]]. Plaintiff's submissions also unequivocally allege that such injury has arisen from the purportedly wrongful conduct of NPS and/or NPF, beginning no earlier than August 2012, in connection with NPS and/or NPF's ongoing efforts to terminate the Lease and remove Plaintiff from Lot 805. *Id*. The District argues that even assuming *arguendo* that the harm to Plaintiff's business interests constitutes legally cognizable injury-in-fact for purposes of standing analysis, Plaintiff has not and could not demonstrate that any such harm is "fairly traceable" to the District's transfer of administrative jurisdiction over the property at issue, or that it would be redressed by a decision to declare the District's transfer of administrative jurisdiction invalid. [Def. District of Columbia's Mot. to Dismiss & Mem. of P. &. A. in Supp. of Mot. (hereinafter "District's Mem. in Supp. of Mot. to Dismiss")], at 6. The Court agrees.

Although they often overlap, the causation and redressability requirements are theoretically distinct." *Mideast Sys. And China Civil Const. Saipan Joint Venture, Inc. v. Hodel*, 792 F.2d 1172, 1176 (D.C. Cir. 1986). Causation "looks at the relationship between the alleged unlawful conduct and the injury[.]" *Id*. Redressability concerns "the relationship between the injury and the requested relief." *Id*. (citations omitted). "This distinction is important in cases where the required relief is so broad that it could alleviate the injury, but where there is still no causal nexus. In many cases, however, the two criteria are simply two facets of a single causation requirement." *Id*. (citation and

internal quotation marks omitted).  In some cases, "it is sufficient to treat the two elements as if they were identical." *Id.*  The instant case is one of those cases.

Clearly, Plaintiff does not allege that the District itself is directly liable for the Park Defendants' attempts to terminate its alleged leasehold interest.  Rather, the underlying conduct challenged by Plaintiff in Count One is the allegedly defective process by which the transfer of administrative jurisdiction over the Georgetown Waterfront Park, including Lot 805, was executed.  Specifically, Count One propounds factual allegations relating to various alleged violations of the conditions for the transfer set forth in the 1985 Resolution, occurring between the years of 1987 and 2005 – more than one decade before the purportedly wrongful attempts by NPF and/or NPS to terminate its lease that gave rise to this lawsuit, and also before Plaintiff alleges to have become a party to the Lease.  *See* Compl. ¶¶ 39-55.  While one of the alleged violations [namely, the assignment of the Lease to NPF] … directly concerns the District's assignment of the Lease to NPF, all others appear to bear no such connection to the Lease or to any other interest asserted by Plaintiff.

Specifically, Plaintiff takes issue with the following actions:

- ***First**,* Plaintiff alleges that the 1985 Resolution provides that jurisdiction shall be transferred to the NPS "5 years after the effective date of this resolution unless … suitable sites and facilities have not been obtained for the relocation of those public works facilities now located on the parcels of land that are part of the Georgetown Waterfront Park," and alleges – albeit vaguely – that "[s]uch public works facilities were not relocated within five years after the effective date of the 1985 Resolution.  Compl. ¶ 40.

  Notably, Plaintiff nowhere alleges that it was harmed by the alleged failure to relocate any public works facilities.  Rather, Plaintiff merely argues that this failure precludes the valid transfer of administrative jurisdiction over Lot 805 from ever having taken place.  *See* Pl.'s Mem. at 12-16.

- ***Second**,* Plaintiff alleges that the 1985 Resolution mandated that an exchange of letters between the Mayor and the NPS provide for a requirement that the NPS assume responsibility to "repair, maintain, and protect all wharves, piers, bulkheads, and similar structures that are located on the transferred land or in adjacent waters," but that the single 1987 Letter, in an act not authorized by the 1985 Resolution, excepted from the NPS's responsibility the obligation to "repair, maintain, and protect wharves, piers, bulkheads, and similar structures that are the subject of leases on the transferred land or in adjacent waters."  Compl. ¶¶ 46-47.

Again, Plaintiff nowhere alleges that it was harmed by the alleged limitation on the responsibility provision. Rather, Plaintiff merely argues that the failure of the 1987 Letter to conform with the requirement set forth by the 1985 Resolution precludes the valid transfer of administrative jurisdiction over Lot 805 from ever having taken place. Pl.'s Mem. at 12-16.

- **Third,** Plaintiff alleges that the Council conditioned approval of the 1985 Resolution on the ability of the exchange of letters to include "conditions, including a reversion of jurisdiction to the District … which fully protect the District … in the event … of …an [a]mendment or cancellation of [a] January 7, 1985 deed between Washington Harbour Associates, Georgetown Potomac Company, Mount Clare Properties (D.C.) Inc., and the United States of America[.]" Compl. ¶ 41. While the 1987 Letter purportedly sufficiently affirmed that a material amendment to the 1985 Deed would trigger reversion of jurisdiction to the District, *id.* ¶ 43, Plaintiff alleges that a "Supplemental Deed of Easements dated March 1, 2005" "significantly and materially" altered easements provided for in the 1985 Deed, therefore triggering reversion of jurisdiction to the District, *id.* ¶ 44-45.

  Once again, Plaintiff nowhere alleges that the supplemental deed harmed its interests. Rather, Plaintiff merely argues that even if the transfer of jurisdiction had been properly effectuated, jurisdiction necessarily reverted to the District in 2005. Pl.'s Mem. at 16-17.

Even assuming, as the Court is required to do in conducting a standing analysis, that the foregoing allegations are true, the Court is hard-pressed to find that Plaintiff has constitutional standing to seek a declaration invalidating the transfer. For starters, Plaintiff has simply not alleged that the above specified defects themselves caused it harm. Nor does Plaintiff appear to be proceeding under a theory that it suffered "procedural injury" from the District's allegedly flawed execution of the transfer. While "procedural injury" may itself constitute injury-in-fact, Plaintiff has expressly disclaimed any intent to "independent[ly] challenge" the transfer of jurisdiction as such; rather, it is clear that its attack on the transfer process is wedded to its core challenge to the authority of the Park Defendants to act under the Lease. *See* Pl.'s [Opp'n] at 11. In any event, even if Plaintiff were claiming procedural injury, "plaintiffs seek[ing] to enforce procedural (rather than substantive) rights … must establish that 'the procedures in question are designed to protect some threatened concrete interest of [theirs] that is the ultimate basis of [their] standing.'" *NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77, 82 (D.C. Cir. 2012) (quoting *Lujan*, 504 U.S. at 573 n. 8). Here, Plaintiff has made no showing that the procedural errors alleged relate in any way to its own leasehold interest.

Rather, it is apparent from Plaintiff's submissions that the alleged procedural errors are Plaintiff's way of attacking the underlying validity of NPS's present-day possession of administrative jurisdiction. The fundamental flaw in Plaintiff's approach, however, is that it has failed entirely to show a sufficiently close causal nexus between the *transfer of administrative jurisdiction* to NPS and the *assignment of the Lease* to NPF. More precisely, Plaintiff has made no showing that the practical effect of a declaratory judgment invalidating the transfer of administrative jurisdiction would be to annul NPF's status as lessor.

Plaintiff makes an admittedly superb effort to conflate the two transactions in its submissions to the Court, and the allegations in its Complaint do imply that but for the District's broader efforts to transfer administrative jurisdiction, the District would not have assigned the Lease to NPF. Yet Plaintiff alleges no facts to even suggest that the purportedly defective execution of the former action necessarily discredits the execution of the latter. As Plaintiff alleges (and the record before the Court confirms), the District and the NPF executed the Assignment Agreement purporting to transfer the Lease on March 30, 2000. *See* Compl. ¶ 28; Pl.'s Mem., Ex. 19 (Lease). Plaintiff also alleges (and the record before the Court confirms) that this assignment agreement was executed in an effort to satisfy one of the conditions set forth in the 1985 Resolution calling for the transfer of jurisdiction. *See* Compl. ¶¶ 25-28, 46-55; *see also* Pl.'s Mem., Ex. 19 (Lease). Whether or not this condition was satisfied may certainly be relevant to whether the transfer of jurisdiction was in fact effectuated. However, it does not automatically follow that a failure to properly effectuate the transfer – which Plaintiff attributes to a handful of technical flaws *wholly unrelated* to the assignment of the Lease – bears any implication for the independent validity of the Assignment Agreement or the corresponding status of NPF as holder of the Lease. And Plaintiff has provided no allegations or explanation from which the Court could plausibly infer that it does.

Nor has Plaintiff satisfied its burden to show that an order declaring the transfer of jurisdiction ineffective would alleviate its alleged injury. An order to this effect would, as a technical matter, revert jurisdiction over the entire Georgetown Waterfront Park to the District. However, for reasons explained above, there is nothing in the record indicating that such a declaration would, operating alone, nullify the Assignment Agreement. While the District and NPF could agree to execute an agreement reassigning the leases on the property to the District for purposes of consistency, this would nevertheless require additional action beyond the scope of the Court's declaration. And "[c]ourts have been loath to find standing when redress depends largely on policy decisions yet to be made by government officials." *U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000). *See Tex. Alliance for Home Care Servs. V. Sebelius*, 811 F. Supp. 2d 76, 98 (D.D.C. 2011) ("Where, as here, overturning a particular agency action would not alter the final outcome, redressability remains unsatisfied.") (citation omitted). Furthermore, it is well-established that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560-61 (quoting *Simon*, 426 U.S. at 38, 43). The "likelihood" of the District and NPF taking the additional step to reassign the lease to the District is slim, especially in view of the District's representations that it equally likely – "if not more so"

that the District would "renew its transfer of jurisdiction to NPS" or, even if the District were in fact forced to reassume status as Plaintiff's lessor, "itself seek to terminate" Plaintiff's alleged tenancy.  [District's Mem. in Supp. of Mot. to Dismiss] at 7.

Because, for all of the foregoing reasons, Plaintiff has failed entirely to demonstrate causation and redressability, the Court holds that Plaintiff lacks constitutional standing to request a declaratory judgment that the District "never effectively transferred" administrative jurisdiction to NPS, or if it did, that such jurisdiction has since reverted to the District.  *See* Compl. at 21, ¶ 1(c).

Mem. Op. (Mar. 28, 2013), ECF No. [29], at 10-19.

For all of these same reasons, the Court finds that Plaintiff lacks constitutional standing to seek a declaratory judgment against the Park Defendants that the District never effectively transferred administrative jurisdiction over Lot 805 to NPS, or if it did, that such jurisdiction has since reverted to the District.  *See* Compl. at 21, ¶ 1(c).[4]

### 3. Plaintiff possesses constitutional standing for the remainder of its claims against the Park Defendants.

While the foregoing holding requires dismissal of one of Plaintiff's five separate requests for declaratory relief pursuant to Count One, the Court must separately consider Plaintiff's standing with respect to the remaining four requests for declaratory judgments, as well as Counts Two through Five.  *See Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 185, 120 S. Ct. 693, 528 U.S. 167 (2000)) ("[A] plaintiff must demonstrate standing separately for each form of relief sought.") (citations omitted).  For the below reasons, the Court

---

[4] Because the Court finds that Plaintiff lacks constitutional standing to challenge the transfer of administrative jurisdiction, it need not reach the Park Defendants' argument that any such challenge is moot.  In any event, the Court agrees with Plaintiff that the Park Defendants' reliance on *Autozone Development Corporation v. District of Columbia*, 484 F. Supp. 2d 24 (D.D.C. 2007) to support its mootness argument is inapposite, as the court in *Autozone* found that the plaintiffs lacked standing because they failed to demonstrate that they had suffered any injury-in-fact resulting from the exercise of eminent domain because their leasehold interest remained intact.  Here, the Court does not doubt that Plaintiff has adequately pled injury-in-fact purportedly resulting from the Park Defendants recent attempts to terminate its alleged leasehold interest; rather, for reasons stated *supra*, the Court finds that Plaintiff lacks standing to challenge the transfer of jurisdiction because the causation and redressability prongs are wanting.

concludes that the present record supports a finding that Plaintiff possesses constitutional standing to bring all of these claims.

The Court shall first address Plaintiff's four remaining requests for declaratory judgments, which are asserted against both Park Defendants and which, contrary to Plaintiff's request for a declaration invalidating the broader transfer of jurisdiction, more directly relate to the Lease at issue.  These requested declarations include declarations that: (1) Plaintiff is a lessee under the Lease; (2) the Lease was never effectively assigned to NPF and NPS is not a party to the Lease; (3) the Park Defendants' decision to terminate the Lease is not permitted by any District of Columbia assignment, resolution, act, letter, or authority; and (4) neither of the Park Defendants have the power or authority to terminate the Lease.

Because ultimately neither NPF nor NPS (acting on behalf of NPF) would possess the legal authority to take action against Plaintiff if each of these four requested declarations are true, the Court finds that Plaintiff has met its burden in showing injury, causation, and redressability. In contrast to Plaintiff's request for a declaration invalidating the broader transfer of jurisdiction, the practical and indeed automatic effect of a declaration that the Lease was never effectively assigned, that termination of the lease is not permitted, or that for some other reason, the NPF has no power to terminate the Lease would be to divest the NPF from its purported authority to take the actions against Plaintiff that are alleged in the Complaint.

Likewise, Plaintiff's tort claims against NPF and Plaintiff's request for a permanent injunction against the Park Defendants from interfering with the business operations of or evicting Plaintiff relate directly to the Park Defendants recent efforts to terminate the Lease.  To the extent that Plaintiff is correct that the Park Defendants' conduct is not legally authorized, the

Court may redress those injuries by ordering compensation to Plaintiff and by enjoining the Park Defendants from taking further action against it.

In summary, and for all of the foregoing reasons, the Court finds that Plaintiff lacks constitutional standing to seek a declaratory judgment against the Park Defendants that the District never effectively transferred administrative jurisdiction over Lot 805 to NPS, or if it did, that such jurisdiction has since reverted to the District.  *See* Compl. at 21, ¶ 1(c).  However, because all other claims asserted against NPS and/or NPF bear a sufficiently close causal nexus (and would theoretically remedy) the alleged injury to Plaintiff's business interests stemming from the recent conflict with the Park Defendants over Plaintiff's alleged leasehold interest, Plaintiff has established constitutional standing to bring those claims. *See Lujan*, 504 U.S. at 561 ("irreducible constitutional minimum of standing" requires "injury in fact" that is "fairly traceable" to the defendant's challenged conduct and "likely" to be "redressed by a favorable decision").

**B.  The Federal Tort Claims Act does not require dismissal of Plaintiff's tort claims against NPF because NPF is not entitled to sovereign immunity.**

Counts Three, Four, and Five assert the following three tort claims against NPF: intentional interference with business relations; conspiracy to carry out an unlawful eviction and interfere with Plaintiff's business relations; and negligent interference with business relations. *See* Compl. ¶¶ 66-86.  Notably, NPS is *not* named as a defendant under any of these counts.  The Park Defendants argue that Plaintiff has failed to exhaust its administrative remedies under the only applicable waiver of sovereign immunity – the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) – by failing to present those claims administratively before the agency.  Park Defs' Mem. at 11.  Therefore, the Park Defendants argue, because Plaintiff cannot identify a valid waiver of sovereign immunity, each of its common law tort claims must be dismissed for

lack of subject matter jurisdiction. *Id.* Alternatively, the Park Defendants argue that even if Plaintiff had exhausted its administrative remedies under the FTCA, there is no waiver of sovereign immunity for Plaintiff's claims because the FTCA explicitly provides that immunity is not waived as to claims arising out of intentional torts or deceit or interference with contract rights. *Id.* at 11-12 (citing 28 U.S.C. § 2680(h)).[5]

While the Park Defendants' articulation of these legal principles is accurate, the Park Defendants have failed to explain why the FTCA should apply to Plaintiff's tort claims against NPF – a 501(c)(3) organization which, although congressionally chartered, is not itself a federal entity entitled to sovereign immunity. Indeed, the authorities Plaintiff has provided suggest otherwise. *See* Pl.'s Opp'n at 4 (citing *YRT Servs. v. United States*, 28 Fed. Cl. 366, 373 (Fed. Cl. 1993) ("The merger agreement was negotiated by the NPF, a non-profit, non-governmental entity, with the current concessioner …"); *Matter of National Park Foundation Lease*, 1983 U.S. Comp. Gen. LEXIS 1863 at *5 (1983) ("[T]he Foundation is neither a state nor another Federal agency …").

What is more, it is well-established that the capacity of a federally chartered organization to be sued is determined by the federal statute or charter under which it is created. *See Loeffler*

---

[5] The Park Defendants also argue, in a footnote, that Plaintiff has also failed to explicitly plead a valid waiver of sovereign immunity for its claims for injunctive relief and that some federal courts have dismissed complaints that, as here, cite only the federal question statute, 28 U.S.C. § 1331 and the Declaratory Judgment Act, 28 U.S.C. § 2201 as a basis for a waiver of sovereign immunity. *See* Park Defs' Mem. at 11, n.1. However, as the Park Defendants acknowledge, the D.C. Circuit has taken a significantly broader view of the waiver of sovereign immunity contained in the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, and has indicated that it may apply where, as here, a Plaintiff has not pled it as a waiver of sovereign immunity. *See Trudeau*, 456 F.3d178, 186 (D.C. Cir. 2006) ("There is nothing in the language of … § 702 that restricts its waiver to suits brought under the APA. The sentence waives sovereign immunity for "[a]n action in a court of the United States seeking relief other than money damages," not for an action brought under the APA.").

*v. Frank*, 486 U.S. 549, 554-557, 108 S. Ct. 1965, 100 L. Ed. 2d 549 (1988) ("sue and be sued" clause waives sovereign immunity); *cf. Am. National Red Cross v. S.G.*, 505 U.S 247, 256-57, 112 S. Ct. 2465, 120 L. Ed. 2d 201 (1992) (holding that the American Red Cross's charter's "sue and be sued" provision confers original federal court jurisdiction over all cases to which the Red Cross is a party); *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust ex rel. Federal Nat. Mortg. Ass'n v. Raines*, 534 F.3d 779, 784 (D.C. Cir. 2008) (holding "sue and be sued" clause of statute enacting federal corporate charter of Fannie Mae confers federal subject matter jurisdiction over cases in which Fannie Mae is a party). *See also* Fed. R. Civ. P. 17(b) (The capacity of a corporation to "sue or be sued is determined …by the law under which [the corporation] was organized").  Here, NPF's Charter contains a "sue and be sued" provision and therefore necessarily waives any potential claim to immunity from suit.  *See* An Act to Establish the National Park Foundation, Pub. L. No. 90-209, § 5 (1967) ("The Foundation shall have … all the usual powers and obligations of a corporation … including the power to sue and to be sued in its own name[.]"); *see also id.* at § 9 ("The United States shall not be liable for any debts, defaults, acts, or omissions of the Foundation.").

The Park Defendants argue that Plaintiff cannot salvage its tort claims from dismissal by claiming that NPF is the alleged tortfeasor when in fact Plaintiff's Complaint has made no plausible allegations against NPF, but rather alleges only that NPF acted "in concert" with NPS and is liable "through actions taken on its behalf by the NPS."  Park Defs' Mem. at 12-13 (citing Compl. ¶¶ 69, 78-80, 84).  The Park Defendants further argue that Plaintiff has painted NPF as the principal and NPS as its agent, when in reality no such agency relationship exists and that, to the contrary, the assignment of the Lease to NPF was merely administrative in nature and NPS as

a practical matter maintained control over the property and was "calling the shots" on all dealings related to the Lease.  Park Defs' Reply at 10-11.

The Court finds these arguments unavailing.  Preliminarily, the Park Defendants' assertion that NPS was, "in reality"  "calling the shots" is not properly considered by the Court on a motion to dismiss.  The Complaint clearly alleges that NPS took action against Plaintiff on behalf of the NPF, and the Court must "grant[ ] [P]laintiff the benefit of all inferences that can be derived from the facts alleged and upon such facts determine jurisdictional questions," such as a question of sovereign immunity.  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal citations and quotation marks omitted).

The Park Defendants argue that because Plaintiff's opposition memorandum challenges the underlying facts of their legal argument that the Court lacks subject matter jurisdiction over Plaintiff's tort claims, the Court may choose to look to matters outside of the pleadings – specifically, certain correspondence between the NPS, NPF, and the District attached as exhibits to the Park Defendants' reply memorandum.  Park Defs' Reply at 11 (citing *Jerome Stevens Pharmacy*, 402 F.3d at 1253).  But even if the Court were to consider this correspondence, although it appears plausible and indeed likely that the NPS was "calling the shots" on the Lease, it is nevertheless also clear that, as a strictly legal matter, NPS was acting as NPF's agent in connection therewith. *See* Park Defs' Reply, Ex. 1 (Letter from Terry R. Carlstrom, Regional Director, NPS to James D. Maddy, NPF President (Sept. 24, 1999)), ECF No. [26-1] ("The National Park Service hereby accepts appointment as National Park Foundation's agent for purposes of fulfilling all obligations, and pursuing all rights and remedies to the terms and provisions of the Lease[ ], in accordance with the terms of such Lease[ ].").  This conclusion is consistent with other evidence in the record clearly indicating that NPF expressly indicated its

concurrence with every notice sent by NPS to Plaintiff relating to the Lease.  *See* Pl.'s Mem., Ex. 11 (Letter from Stephen E. Whitesell, NPS Regional Director to Paul Simkin, Owner of Jack's Canoes and Kayaks, LLC (Dec. 18, 2012)); Pl.'s Mem., Ex. 13 (Letter from Stephen E. Whitesell, NPS Regional Director to Paul Simkin, Owner of Jack's Canoes and Kayaks, LLC (Jan. 18, 2013));  Pl.'s Emerg. Mot. and Mem. for Contempt, ECF No. [15], Ex., at 6 (Letter from Stephen E. Whitesell, NPS Regional Director, to Paul Simkin, Owner of Jack's Canoes and Kayaks, LLC (March 1, 2013)).

Accordingly, because the Park Defendants have failed to demonstrate that a waiver of sovereign immunity is a necessary prerequisite to the Court's proper assertion of jurisdiction over the NPF, the Court declines to dismiss Plaintiff's tort claims as barred by the FTCA.[6]

**C.   The remainder of the Park Defendants' motion to dismiss shall be denied without prejudice, with leave to re-file after Plaintiff files a notice clarifying the legal and factual bases for the claims it intends to pursue in this action.**

Finally, the Court shall explain why it is unable on the record presently before it to address the remainder of the Park Defendants' arguments for dismissal – specifically, that Plaintiff's Complaint must be dismissed as time-barred, *see id*. at 16; that Plaintiff has waived any challenge it may have had to the assignment of the Lease, *see id*. at 15; Park Defs' Reply at 5-6; and that Plaintiff's Complaint fails to state a claim upon which relief can be granted, *see*

---

[6] Although at no point raised by the Park Defendants, it also bears mention that Plaintiff has argued that the Court should exercise supplemental jurisdiction over Plaintiff's common law tort claims against NPF because such claims are "so related to claims" over which the Court possesses original jurisdiction – specifically, Plaintiff's claims in count one for declaratory judgment against the NPS – that the claims "form part of the same case or controversy."  *See* Pl.'s Mem. at 5-6 (citing 28 U.S.C. § 1367).  The Park Defendants have at no point disputed this argument, and based on the present record, the Court agrees that the facts underlying Plaintiff's tort claims and claims for declaratory judgment may overlap so greatly such that the exercise of supplemental jurisdiction over Plaintiff's claims against NPF may be justified by considerations of judicial economy and convenience to the litigants.  However, it is premature to reach that conclusion.

Park Defs' Mem. at at 17-19.  In brief, despite its best efforts, the Court is unable to determine the applicability of these defenses due to the extremely imprecise nature of Plaintiff's Complaint – especially Plaintiff's requests for declaratory judgment.

It cannot be disputed that the entirety of Plaintiff's Complaint is premised on a claim that neither NPS nor NPF has the authority to terminate its alleged leasehold interest.  Plaintiff's requests for declaratory and injunctive relief hinge on this claim, and its tort counts would presumably be rendered meritless if the Park Defendants did in fact have the right to take the complained of actions.  The problem, however, is that Plaintiff's Complaint fails to sufficiently articulate the legal and factual grounds for this central claim.  *See generally* Compl.

Plaintiff's circular and inconsistent briefing only further confuses matters.  As for its legal basis, Plaintiff appears on the one hand to be asserting an APA-style procedural attack on the assignment of the Lease to NPF in 2000. *See, e.g.*, Compl. ¶¶ 39-57; Pl.'s Opp'n to District's Mot. to Dismiss, ECF No. [23], at 4-7 (citing to cases discussing an "aggrieved party's" entitlement to challenge agency action pursuant to the APA).  On the other hand, Plaintiff appears to ground its claims in contract.  *See*, *e.g.*, Pl.'s Opp'n to District's Mot. to Dismiss, ECF No. [23], at 9-11 (citing to cases discussing contract principles and referring to the Defendants' continued reliance on the transfer of jurisdiction and the Lease assignment as ongoing "breaches").  Because the Court lacks clarity as to the legal bases for Plaintiff's claims, the Court cannot determine the applicable statute(s) of limitations or, equally importantly, at what point Plaintiff's cause(s) of action accrued such that the limitations period(s) began to run.  *See Algrant v. Evergreen Valley Nurseries Ltd. Partnership*, 126 F.3d 178, 181 (3d Cir. 1997) (As a general rule, an action for declaratory judgment will be barred to the same extent the applicable statute of limitations bars an underlying action in law or equity).  For this same reason, the Court

is unable to assess the validity of the Park Defendants' contract-based argument that Plaintiff should be equitably estopped as having waived any challenges to the assignment of the Lease to NPF by neglecting to challenge that assignment earlier and by paying monthly rent checks to NPF since Plaintiff's incorporation in 2007.

The factual grounding for Plaintiff's principal contention regarding the Park Defendants' lack of authority to act in connection with the Lease is equally unclear.  Based upon the Court's painstaking attempt to decipher Plaintiff's Complaint, it appears that Plaintiff has asserted that NPF (through actions taken on its behalf by NPS) cannot lawfully terminate its alleged leasehold interest for the below reasons:

- **The transfer of administrative jurisdiction to NPF was defective.**  *See* Compl. ¶¶ 39-57; *id.* at 21 ¶ 1(c).

  However, for reasons stated above, *supra* Part III.A.2, Plaintiff lacks constitutional standing to challenge the validity of the transfer of administrative jurisdiction.

- **The Lease was never effectively assigned to NPF because it lacked legislative authorization.**  *See id.* ¶¶ 25-28; 52-55; *id* at 21 ¶ 1(b).

  For reasons explained in this Court's ruling on the Plaintiff's motion for preliminary injunctive relief, the Court doubts the merits of this claim.  Plaintiff alleges that, although the 1985 Resolution specifically required the District to assign the Lease to NPS, the District instead assigned the Lease to the NPF.  Compl. ¶¶ 48-55.  While Plaintiff acknowledges the passing by the District of Columbia Council of two Emergency Resolutions amending the 1985 Resolution to permit NPF to "accept the assignment of leases [including the Lease] for the [NPS] under the transfer of jurisdiction authorized by [the 1985 Resolution]," Plaintiff alleges that the Assignment Agreement concerning its Lease was executed at a time after one of the resolutions had expired, and before the

other resolution became effective. *See* Compl. ¶¶ 52-55 & Ex. 17 (Emergency Resolution (April 4, 2000)); Ex. 18 (Emergency Resolution (December 21, 1999)). Accordingly, Plaintiff argues that because the District failed to provide for the assignment of its Lease to NPF legislatively at the time the assignment was executed, the assignment was invalid. *See* Pl.'s Mem. at 14-15.

However, the record before the Court belies Plaintiff's argument. The Assignment Agreement itself provides as follows:

> WHEREAS, the Council enacted Act No. 13-252, the "Transfer of Jurisdiction over Georgetown Waterfront Park for Public Park and Recreational Purposes, S.O. 84-230, Emergency Act of 1999", effective January 27, 2000, amending the Resolution to authorize the District to assign the Leases to Assignee.

Pl.'s Mem., Ex. 19 (Assignment Agreement).

Curiously, neither Plaintiff nor the Park Defendants have directed the Court's attention to the referenced legislation, but the publicly available act corroborates this provision. *See* D.C. Act 13-252 (January 27, 2000) ("The phrase 'National Park Service' in section 3(7) of [the 1985 Resolution] includes the 'National Park Foundation for the benefit of the National Park Service.'") Unless the Plaintiff can point the Court to evidence to the contrary, or to other allegations within its Complaint which would support a finding that the Lease was never effectively assigned to NPF, Plaintiff's claim that the Assignment Agreement itself is invalid appears to lack merit.

- **Even if the Lease was effectively assigned to NPF, NPF nevertheless lacks authority to terminate Plaintiff's leasehold interest.** *See* Compl. ¶¶ 51, 56-57; *id* at 21 ¶ 1(d)-(e).

Finally, Plaintiff appears to assert that, for some other unspecified reason, the NPF lacks the authority to terminate the Lease. Plaintiff cannot base this argument on the Lease itself, as the Lease expressly permits that "if no default occurs on the part of the

Lessee, then he shall be entitled to thirty (30) days' notice to vacate the premises." Pl.'s Mem., Ex. 4 (Lease) at 3-4. Nor does there appear to be anything in the Assignment Agreement that precludes NPF, as the assignee, from terminating the Lease. *See id.*, Ex. 19 (Assignment Agreement). Plaintiff cursorily alleges that the decision by the Park Defendants to terminate the Lease so that NPS could grant a concession to operate the boathouse is not authorized by the terms of the assignment because under the concession the NPS plans to issue, franchise fees would be payable to NPS (and in turn to the United States Treasury), rather than to NPF for the benefit of the Georgetown Waterfront Park. Compl. ¶¶ 4, 6, 56-57. But Plaintiff nowhere alleges that the Assignment Agreement itself precludes such action, and the Court is in any event highly dubious of Plaintiff's ability to show standing and ripeness for a claim as to what NPS will do with the land after Plaintiff's alleged leasehold interest is terminated. Unless Plaintiff can point the Court to other allegations or arguments which the Court has overlooked, Plaintiff's assertion that the NPF somehow lacks authority to terminate the Lease also appears to lack merit.

Upon a searching review of Plaintiff's submissions, the Court cannot decipher any additional grounds for Plaintiff's foundational assertion that the NPF's attempts to terminate its leasehold interest are unlawful. Due to the exceedingly amorphous nature of the Complaint, however, the Court deems it necessary to request that Plaintiff either confirm the Court's understanding of its claims, or expound upon any grounds asserted in its Complaint that Plaintiff believes the Court has overlooked. Only upon obtaining this clarification from Plaintiff will the Court and the Park Defendants alike be able to determine the applicability of any defenses available to the Park Defendants on a motion to dismiss.

Accordingly, by no later than **Wednesday, April 17, 2013**, Plaintiff shall file with the Court a Notice of Claims which shall:

(1) Indicate the legal basis for *each* of its four surviving claims for declaratory judgment, Compl. at 21, ¶1(a),(b), (d), and (e)  (*i.e.*, APA, contract law, etc.)

(2) Indicate the accuracy of the Court's above description of the alleged factual basis for Plaintiff's foundational contention regarding the NPF's purported lack of authority to terminate Plaintiff's alleged leasehold interest.  If the Court's description is inaccurate, Plaintiff shall specify which portions are inaccurate and why.  Plaintiff shall also point the Court to any allegations contained within its Complaint which Plaintiff believes the instant Memorandum Opinion may have misinterpreted or overlooked, and explain why such allegations support its argument that the Park Defendants are not authorized to terminate its Lease.

(3) Indicate which statute of limitations Plaintiff believes to apply to *each* of Plaintiff's surviving claims (*i.e.*, each of its four surviving claims for declaratory judgment, its claim for injunctive relief, and its tort claims against NPF).  With respect to Plaintiff's requests for declaratory and injunctive relief, Plaintiff shall separately indicate which statute(s) of limitations applies to NPS, and which applies to NPF.  Plaintiff shall also indicate at which point it views the applicable statute of limitations to have begun to run for each claim.

Further, by no later than **Friday, April 26, 2013**, the Park Defendants shall file a renewed motion to dismiss, if any, and shall tailor the motion to speak to Plaintiff's claims and arguments as clarified by Plaintiff in its Notice of Claims.  Plaintiff shall file its opposition to the Park Defendants' renewed motion to dismiss by no later than **Monday, May 6, 2013**.  The Park Defendants' shall file their reply in further support of its renewed motion to dismiss by no later than **Monday, May 13, 2013**.

The Court cautions both Plaintiff and the Park Defendants that they shall not view this as an opportunity to reassert arguments upon which this Court has previously ruled.

## IV. CONCLUSION

For the foregoing reasons, the Park Defendants' [22] Motion to Dismiss shall be GRANTED-IN-PART and DENIED-IN-PART.

Specifically, the motion is GRANTED insofar as it requests dismissal, due to Plaintiff's lack of constitutional standing, of Plaintiff's request for a declaratory judgment that jurisdiction for administration and maintenance of Lot 805 was never effectively transferred by the District to NPS, or if it was, such jurisdiction has since reverted to the District.

To the contrary, because the Court finds based on the present record that Plaintiff possesses standing to pursue the remainder of its claims against the Park Defendants, the Court DENIES the Park Defendants' motion to dismiss those claims on standing grounds.

The motion is also DENIED insofar as it seeks dismissal of Plaintiff's tort claims against NPF, as the Court concludes that NPF, a 501(c)(3) non-governmental organization, is not entitled to sovereign immunity for those claims.

Finally, the Court is unable to determine the applicability of the remaining arguments asserted in the Park Defendants' motion to dismiss due to Plaintiff's failure, both in its Complaint and briefing, to adequately articulate the legal and factual grounds for its claims. For this reason, the Court shall require Plaintiff to file a Notice of Claims which shall clarify the precise contours of the claims Plaintiff intends to pursue in this action, in accordance with the specific instructions set forth in this Memorandum Opinion and accompanying Order. Accordingly, the Court DENIES-WITHOUT-PREJUDICE the remainder of the Park

Defendants' motion to dismiss, with leave to re-file after tailoring the motion to speak to Plaintiff's claims and arguments as clarified by Plaintiff in its Notice of Claims.

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge